**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PATRICE CHAMBERS, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>HSBC BANK USA, N.A.,<br><br>        Defendant. | Civil Action No.   1:19-cv-10436-ER<br><br>Hon. Edgardo Ramos<br><br><u>Oral Argument Requested</u> |

**MEMORANDUM OF LAW IN SUPPORT OF**
**HSBC BANK USA, N.A.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.    BACKGROUND .................................................................................................2

    A.    The Account Agreement ...........................................................................2

    B.    The Challenged Practices And Plaintiff's Transactions ...........................4

III.    ARGUMENT ......................................................................................................5

    A.    Standard On A Motion To Dismiss ..........................................................5

    B.    Plaintiff Does Not, And Cannot, Plausibly Allege Any Of Her Common Law Claims ..............................................................................5

        1.    The Contract Claim Fail Because The Rules And Disclosures Expressly Authorize HSBC To Asses An NSF Fee For "Each" Transaction That Exceeds The Available Account Balance .......................5

        2.    Plaintiff's Claim For Breach Of The Implied Covenant Is Duplicative Of Her Contract Claims And Impermissibly Seeks To Impose Obligations Inconsistent With The Rules And Disclosures ...........9

        3.    Plaintiff Does Not, And Cannot, State A Claim For Unjust Enrichment ...............................................................................11

    C.    Plaintiff's GBL § 349 Claim Also Fails Because It Is Based On Contractually Authorized Conduct ........................................................11

    D.    Plaintiff's State Law Claims Are Also Barred By Federal Preemption Pursuant To The NBA And OCC Regulations ......................................12

IV.    CONCLUSION................................................................................................16

LA 52297118

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

904 Tower Apartment LLC v. Mark Hotel LLC,
    853 F. Supp. 2d 386 (S.D.N.Y. 2012)........................................................11

Am. Bankers Ass'n v. Lockyer,
    239 F. Supp. 2d 1000 (E.D. Cal. 2002)....................................................14

Arthur Props., S.A. v. ABA Gallery, Inc.,
    11 CIV. 4409 LAK, 2011 WL 5910192 (S.D.N.Y. Nov. 28, 2011)........................11

Ashcroft v. Iqbal,
    556 U.S. 662 (2d Cir. 2009)...............................................................5

Bank of Am. v. City & Cty. of S.F.,
    309 F.3d 551 (9th Cir. 2002) .........................................................13, 14

Barnett Bank, N.A. v. Nelson,
    517 U.S. 25 (1996)........................................................................13

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).......................................................................5

Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.,
    No. 11 CIV. 4509 RJS, 2013 WL 1385210 (S.D.N.Y. Mar. 18, 2013)...................12

Burger King Corp. v. Weaver,
    169 F.3d 1310 (11th Cir. 1999) .........................................................10

Canstar v. J.A. Jones Constr. Co.,
    622 N.Y.S.2d 730 (1995)..................................................................10

Costoso v. Bank of Am.,
    74 F. Supp. 3d 558 (E.D.N.Y. 2015) ....................................................10

Coty, Inc. v. L'Oreal S.A.,
    320 F. App'x 5 (2d Cir. 2009) ..........................................................11

Cruz v. FXDirectDealer, LLC,
    720 F.3d 115 (2d Cir. 2013)...............................................................9

Ellsworth v. U.S. Bank, N.A.,
    908 F. Supp. 2d 1063 (N.D. Cal. 2012) .................................................13

First Nat'l Bank v. California,
    262 U.S. 366 (1923) .................................................................................................13

Franklin Nat'l Bank v. New York,
    347 U.S. 373 (1954) .................................................................................................14

Gutierrez v. Wells Fargo Bank, NA,
    704 F.3d 712 (9th Cir. 2012) ...................................................................................15

Hall v. Earthlink Network. Inc.,
    396 F.3d 500 (2d Cir. 2005) ....................................................................................10

Harris v. Mills,
    572 F.3d 66 (2d Cir. 2009) .........................................................................................5

Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.,
    331 F. Supp. 3d 130 (S.D.N.Y. 2018) .....................................................................10

Lambert v. Navy Fed. Credit Union,
    No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) .......................7, 8

Mariah Re Ltd. v. Am. Family Mut. Ins. Co.,
    52 F. Supp. 3d 601 (S.D.N.Y. 2014), aff'd, 607 F. App'x 123 (2d Cir. 2015).........................9

Marquette Nat'l Bank v. First of Omaha Serv. Corp.,
    439 U.S. 299 (1978)..........................................................................................1, 12

Metro. Elec. Mfg. Co. v. Herbert Constr. Co., Inc.,
    583 N.Y.S.2d 497 (1992) ........................................................................................11

Miller v. Wells Fargo Bank, N.A.,
    994 F. Supp. 2d 542 (S.D.N.Y. 2014)................................................................9, 10

Monroe Retail, Inc. v. Charter One Bank, N.A.,
    624 F. Supp. 2d 677 (N.D. Ohio 2007)...................................................................14

Montgomery v. Bank of Am. Corp.,
    515 F. Supp. 2d 1106 (C.D. Cal. 2007) ..................................................................14

Morrissey v. Nextel Partners, Inc.,
    895 N.Y.S.2d 580 (2010) ........................................................................................12

MS Fed. Acquisition, LLC v. U.S. Bank Nat'l Ass'n,
    No. 14-CV-7794-LTS, 2015 WL 4461740 (S.D.N.Y. July 21, 2015)...................5, 6

Rose v. Chase Bank USA, N.A.,
    513 F.3d 1032 (9th Cir. 2008) .................................................................................14

LA 52297118

Sands v. Ticketmaster-New York, Inc.,
    616 N.Y.S.2d 362 (1994) ...........................................................................................12

Silvas v. E*Trade Mortg. Corp.,
    514 F.3d 1001 (9th Cir. 2008) ..................................................................................14

Spagnola v. Chubb Corp.,
    574 F.3d 64 (2d Cir. 2009).........................................................................................11

Watters v. Wachovia Bank, N.A.,
    550 U.S. 1 (2007) ......................................................................................................13

Wells Fargo Bank of Texas N.A. v. James,
    321 F.3d 488 (5th Cir. 2003) ....................................................................................14

In re World Trade Ctr. Disaster Site Litig.,
    754 F.3d 114 (2d Cir. 2014).........................................................................................7

Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC,
    No. CV166370SJFAYS, 2017 WL 6729854 (E.D.N.Y. Oct. 31, 2017), aff'd,
    736 F. App'x 274 (2d Cir. 2018) ................................................................................6

**Statutes**

12 U.S.C. § 21 ....................................................................................................................2

12 U.S.C. § 24 .........................................................................................................2, 12, 13

N.Y. Gen. Bus. Law § 349..........................................................................1, 2, 11, 12

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................................5

**Regulations**

12 C.F.R. § 7.4002 ...............................................................................2, 13, 14, 15

12 C.F.R. § 7.4007 ...............................................................................2, 12, 13, 15

12 C.F.R. § 7.4009 ...............................................................................................2, 12

## I.     INTRODUCTION

Plaintiff Patrice Chambers ("Plaintiff") admits that defendant HSBC Bank USA, N.A. ("HSBC") properly assessed a non-sufficient funds ("NSF") fee to her checking account when non-party Santander submitted an ACH payment request and HSBC returned that request because her account lacked sufficient funds.  Plaintiff also admits that HSBC properly assessed an NSF fee when Geico submitted an ACH payment request that similarly was returned due to insufficient funds.  However, Plaintiff complains that HSBC wrongfully assessed such fees when Santander and Geico submitted <u>second</u> payment requests approximately one week after the initial requests and her account still lacked sufficient funds.  Plaintiff contends that the agreement governing her HSBC account permits HSBC to charge only a "single" NSF fee, no matter how many times a merchant requests payment.  Based on this contention, Plaintiff asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and breach of New York General Business Law § 349 ("GBL § 349").  However, as demonstrated here, Plaintiff's claims are based on a misconstruction of her account agreement and otherwise fail as a matter of law.

<u>First</u>, Plaintiff's claim for breach of contract necessarily fails because the operative agreement expressly informed Plaintiff that HSBC would impose NSF fees "[f]or <u>each</u> withdrawal, check, electronic funds transfer or other item that overdraws your account . . . ." Accordingly, when Geico and Santander presented their respective requests for payment a second time, "each" of those requests were new ACH items eligible for a separate NSF fee—just as a second check would be a new check even if it was submitted by the same merchant, in the same amount, for the same purpose.  <u>Second</u>, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because it is duplicative of Plaintiff's claim for breach of contract and otherwise seeks to impose obligations inconsistent with Plaintiff's account

agreement.  <u>Third</u>, under well-settled law, Plaintiff's claim for unjust enrichment is precluded by the presence of an express contract governing her relationship with HSBC.  <u>Finally</u>, Plaintiff's GBL § 349 claim fails because it is based on contractually authorized conduct that cannot plausibly constitute a deceptive act governed by the statute.

Plaintiff's claims are also barred by federal preemption under the National Bank Act, 12 U.S.C. § 21 <u>et seq.</u> (the "NBA"), and federal regulations promulgated by the Office of the Comptroller of the Currency (the "OCC").  Through her state law claims, Plaintiff seeks to dictate the manner in which HSBC assesses NSF fees and how it discloses those practices.  Such claims interfere with HSBC's power as a national bank to receive deposits and engage in the business of banking pursuant to 12 U.S.C. § 24 (Seventh); improperly impose conflicting state standards on the establishment of charges and fees and the method of calculating them pursuant to 12 C.F.R. § 7.4002; and impermissibly regulate bank deposit-taking and operational powers under 12 C.F.R. §§ 7.4007 and 7.4009.  As a result, Plaintiff's Complaint should be dismissed in its entirety and with prejudice.

## II.    BACKGROUND

### A.    The Account Agreement

Plaintiff is a consumer checking account customer of HSBC.  The terms and conditions for HSBC checking accounts are set forth in a written agreement entitled "Rules for Deposit Accounts" (the "Rules") and a written addendum entitled "Terms & Charges Disclosure" (the "Disclosures").  (Compl. Exs. A, B.)  Plaintiff acknowledges that the Rules and Disclosures constitute a contract with HSBC and annexes them as exhibits to her complaint.  (<u>Id.</u> ¶¶ 9-10, 57, Exs. A, B.)

With respect to NSF fees, the Rules explain:

**Overdrafts and overdraft fees**

An overdraft occurs when you do not have enough money (available balance) in your account to cover a transaction, but we pay it anyway.

. . .

We can cover your overdrafts through our standard overdraft practices or through an overdraft protection plan. Through our standard overdraft practices, we authorize and pay overdrafts for checks and overdrafts for preauthorized automatic bill payments. . . .  Under our standard overdraft practices, we will charge you the associated Insufficient Funds (NSF) or Unavailable Funds (UNA) fees listed on our *Terms and Charges Disclosure* when an overdraft occurs.

(Id. Ex. B at 3-4.)  The Disclosures provide:

| | | | |
|---|---|---|---|
| **OVERDRAFT AND RETURNED ITEMS FEES** | Insufficient Funds (NSF) | $35 | For each withdrawal, check, electronic funds transfer or other item that overdraws your account. A fee is charged whether we pay or return the item. Example: When a check is presented for payment from your account and you don't have enough money to cover the check, we return or pay it and charge a fee. However, if your ledger balance at the end of the Business Day is overdrawn by $10 or less, there is no fee. |

(Id. Ex. A at 2.)

An "item," as that term is used in the Disclosures, is defined in the Rules as follows:

An "item" includes checks, substitute checks, remotely created checks, withdrawal slips or other in-person transfers or withdrawals, service charges, electronic items or transactions, including withdrawals made from an Automated Teller Machine, everyday or recurring debit card transactions, pre-authorized payments or transfers, ACH transactions, telephone initiated transfers, online banking transfers or bill payment instructions, and any other instruments or instructions for the payment, transfer or

withdrawal of funds including an image or photocopy of any of
these.

(Id. Ex. B at 3-4.)

**B.    The Challenged Practices And Plaintiff's Transactions**

Plaintiff does not challenge HSBC's right to impose an NSF fee when a checking account

customer's available balance is insufficient to cover a transaction.  Rather, Plaintiff challenges

HSBC's ability to impose an NSF fee when a previously returned payment is presented a second

time to HSBC by a merchant and the account balance is insufficient to cover the second

transaction.

Here, Plaintiff alleges that on May 17, 2019, she authorized a payment to Santander,

which HSBC returned due to insufficient funds in her checking account. (Id. ¶¶ 14–15.)  Plaintiff

concedes that HSBC appropriately charged an NSF fee in connection with that transaction.  (Id. ¶

15.)  Plaintiff further alleges that, twelve days later, on May 29, 2019, the payment she initiated

on May 17, 2019, was presented a second time to HSBC by Santander.  (Id. ¶ 16.)  Plaintiff's

available account balance was insufficient to complete the transaction on May 29, 2019, and

once again HSBC returned the transaction due to insufficient funds and assessed an NSF fee.

(Id.)

Less than one month later, Plaintiff again overdrew her account.  On June 21, 2019,

Plaintiff authorized a payment to Geico that was returned due to insufficient funds.  (Id. ¶ 20.)

Plaintiff was again charged an NSF fee, which she concedes was appropriate under the Rules

governing her account.  (Id.)  Plaintiff further alleges that, six days later on June 27, 2019, the

payment that Plaintiff initiated on June 21, 2019, was presented a second time to HSBC by

Geico.  (Id. ¶ 24.)  Plaintiff's available account balance was insufficient to complete the

transaction, which was returned by HSBC and resulted in the assessment of another NSF fee on Plaintiff's account.  (Id.)

Based on this sequence of events and the assessed fees, Plaintiff asserts claims against HSBC for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of GBL § 349.

## III.   ARGUMENT

### A.    Standard On A Motion To Dismiss

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts apply a "plausibility standard," which is guided by "[t]wo working principles."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2d Cir. 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  First, although courts must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions," thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679.  Importantly, determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.; accord Harris, 572 F.3d at 72.

### B.    Plaintiff Does Not, And Cannot, Plausibly Allege Any Of Her Common Law Claims.

#### 1.    The Contract Claim Fail Because The Rules And Disclosures Expressly Authorize HSBC To Asses An NSF Fee For "Each" Transaction That Exceeds The Available Account Balance.

Contract interpretation is a question of law that may be resolved at the dismissal stage. See MS Fed. Acquisition, LLC v. U.S. Bank Nat'l Ass'n, No. 14-CV-7794-LTS, 2015 WL

4461740, at *4 (S.D.N.Y. July 21, 2015) (dismissing contract claim where plaintiff's claim was "plainly inconsistent with the unambiguous language of the [contract]").  To assert a claim for breach of contract, Plaintiff must plausibly allege a breach of the Rules or Disclosures by HSBC. However, where a contract expressly authorizes the defendant's alleged conduct, there can be no breach, and any claim for breach of contract must be dismissed.  See id. at *4; Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC, No. CV166370SJFAYS, 2017 WL 6729854, at *15 (E.D.N.Y. Oct. 31, 2017), aff'd, 736 F. App'x 274 (2d Cir. 2018) ("[I]f the governing contract authorized the [action] [with] which Plaintiff takes issue, there can be no breach and hence Plaintiff's claim will fail as a matter of law.").

Here, Plaintiff's contract claim turns on interpreting the Rules and Disclosures to prohibit NSF fees on more than one electronic item presented to HSBC by a non-party merchant for the same purchase.  But the Disclosures expressly authorize HSBC to assess NSF fees on such items. The Disclosures provide that HSBC may charge an NSF fee "[f]or each withdrawal, check, electronic funds transfer or other item that overdraws your account" and that an "item" may include "electronic items or transactions, including . . . pre-authorized payments or transfers, ACH transactions, and any other instruments or instructions for the payment, transfer or withdrawal of funds . . . ."  (Compl. Ex. A at 2 (emphasis added); id. Ex. B at 4.)  Thus, under the plain language of the Rules and Disclosures, each payment request made to HSBC is a separate "item," potentially subject to an NSF fee.  As a practical matter, the application is simple and straightforward: when an ACH transfer (or a check or a wire transfer) is presented against an account for payment and there are insufficient funds to pay it, the item is either returned and a fee is assessed, or the item is paid and a fee is assessed.  When Plaintiff's account did not have sufficient funds at each point in time that the ACH transfers were presented against

it, HSBC had the contractual right to return them and charge a fee "each" time an item was presented.

In an attempt to survive dismissal, Plaintiff artfully characterizes the Santander and Geico payments at issue as the "same item[s]" as the prior rejected payments.  See, e.g., Compl. ¶¶ 16, 21.  However, the operative provisions of the Rules and Disclosures do not use the word "same" and, critically, do not prohibit HSBC from assessing NSF fees if a payment is for the same purpose or from the same vendor as a prior request for payment.  See In re World Trade Ctr. Disaster Site Litig., 754 F.3d 114, 123 (2d Cir. 2014) ("[C]ourts may not by construction add or excise terms . . . and thereby make a new contract for the parties under the guise of interpreting the writing.").  Indeed, HSBC can and does disclose terms and information that relate to the "same" item or transaction when it intends to, but did not do in the NSF fee provisions. Compare Compl. Ex. B at 7 (explaining that accountholders may request a refund for losses if the accountholder "think[s] that . . . [HSBC] withdrew money from [the] account more than once for the same check" (emphasis added)) with id. Ex. A at 2, Ex. B at 4 (making no mention of the "same" item).

Finally, Plaintiff's argument has been unequivocally rejected by at least one other court on a motion to dismiss.  In Lambert v. Navy Fed. Credit Union, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019), plaintiff asserted the same argument (brought by some of the same attorneys) asserted by Plaintiff here, based on similar disclosure language. Specifically, plaintiff in Lambert alleged that the defendant credit union improperly charged multiple NSF fees for multiple attempts to process an alleged "single payment" in violation of her contract with defendant.  Compare id. at *1 with Compl. ¶ 29.  The court unequivocally disagreed, holding that plaintiff's "interpretation is unreasonable in light of the contract as a

whole," which "unambiguously gives [defendant] the contractual right to impose fees in the way that it did." Id. at *3-4. Specifically, the disclosures in that case provided that the defendant credit union would assess an NSF fee for "each returned debit item." Id. at *3 (emphasis added). Giving those terms their plain meaning, and reading them in the context of the disclosures as a whole, the court rightly concluded:

> When Plaintiff's insurer 're-presented' the request for payment, it was a new ACH debit item—just as a second check would be a new check even if it was by the same merchant, in the same amount, for the same purpose—and was therefore eligible for a fee when it was returned for nonsufficient funds.

Id. at *4. And because the credit union "returned" the second ACH payment request, the second NSF fee complied with the plain terms of the disclosures. Id. at *3-4. As result, the court dismissed plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing with prejudice.

As in Lambert, HSBC's Rules and Disclosures give HSBC the right to charge a fee for each presentment of an ACH request for payment, even if that request is by the same merchant, in the same amount, and for the same purpose. The Disclosures informed Plaintiff that HSBC would assess an NSF fee "[f]or each withdrawal, check, electronic funds transfer or other item that is drawn against unavailable funds" regardless of "whether we pay or return the item." (Compl. Ex. A at 2 (emphasis added); see id. Ex. B at 4 ("[W]e will charge you the associated Insufficient Funds (NSF) or Unavailable Funds (UNA) fees listed on our Terms and Charges Disclosure when an overdraft occurs.").) Under the express terms of the Rules and Disclosures, the resubmitted transactions at issue constitute separate "items" that are each subject to an NSF fee. Indeed, Plaintiff's allegations demonstrate that HSBC did what it said it would do—it assessed an NSF fee each time Santander and Geico presented a payment request when

Plaintiff's account had insufficient funds.  Because Plaintiff's available account balances were insufficient to cover the new items, HSBC did not breach the Rules or Disclosures by charging NSF fees on those items.  Plaintiff's claim for breach of contract should therefore be dismissed with prejudice.

> **2.    Plaintiff's Claim For Breach Of The Implied Covenant Is Duplicative Of Her Contract Claim And Impermissibly Seeks To Impose Obligations Inconsistent With The Rules And Disclosures.**

As an initial matter, where, as here, a claim for breach of the implied covenant rests on the same underlying conduct as a claim for breach of contract, the implied covenant claim should be dismissed.  See Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) (affirming dismissal of implied covenant claim, holding that "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant"); see also Mariah Re Ltd. v. Am. Family Mut. Ins. Co., 52 F. Supp. 3d 601, 615 (S.D.N.Y. 2014) (dismissing claim for breach of covenant of good faith and fair dealing as redundant of breach of contract claim, holding that New York law does not permit plaintiffs to plead such claims in the alternative), aff'd, 607 F. App'x 123 (2d Cir. 2015); Miller v. Wells Fargo Bank, N.A., 994 F. Supp. 2d 542, 556 (S.D.N.Y. 2014) ("[B]ecause plaintiff's claim for breach of the implied covenant of good faith and fair dealing and his breach of contract claim clearly rest on the same alleged practices, his breach of the implied covenant claim must be dismissed.") (internal quotation omitted).

In this case, there is no question that Plaintiff bases both her contract and implied covenant claims on the same allegations.  (Compare, e.g., Compl. ¶ 31 ("HSBC breached the contract when it charged more than one [NSF] fee per item") with ¶ 43 ("[B]y charging more than one NSF Fee on a single item, HSBC . . . violates the implied covenant to act in good faith").)  Plaintiff's allegation that HSBC "abuses" the discretion afforded to it in the Rules and

Disclosures "by exercising its discretion in its own favor" (id. ¶ 43), does not change the duplicative nature of Plaintiff's implied covenant claim because, fundamentally, Plaintiff bases both claims on her assertion that HSBC violated the Rules and Disclosures by imposing NSF fees on the second set of items presented by Santander and Geico to HSBC.  See Miller, 994 F. Supp. 2d at 555–56 (dismissing implied covenant claim where it and plaintiff's contract claim both "clearly rest[ed] on the same alleged practices") (internal quotation omitted); Hall v. Earthlink Network. Inc., 396 F.3d 500, 508 (2d Cir. 2005) (dismissing implied covenant claim on the basis that it was "duplicative of [plaintiff's] breach of contract claim"); Canstar v. J.A. Jones Constr. Co., 622 N.Y.S.2d 730, 731 (1995) (dismissing implied covenant claim as "intrinsically tied to the damages allegedly resulting from a breach of contract.").

Further, Plaintiff's implied covenant claim fails for the separate and additional reason that a plaintiff cannot use an implied covenant claim to impose obligations "that would be inconsistent with other terms of the contractual relationship."  Costoso v. Bank of Am., 74 F. Supp. 3d 558, 572 (E.D.N.Y. 2015) (internal quotation omitted).  Where contracts expressly authorize defendants' alleged conduct, courts should dismiss implied covenant claims.  See id. at 572–73 (dismissing implied covenant claim where the defendant's conduct "did not, violate any express terms of the Account Agreement"); see also Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc., 331 F. Supp. 3d 130, 151 (S.D.N.Y. 2018) (dismissing implied covenant of good faith claim, noting that "[t]he covenant cannot be used to imply an obligation inconsistent with other terms of a contractual relationship") (internal quotation and alterations omitted); Burger King Corp. v. Weaver, 169 F.3d 1310, 1318 (11th Cir. 1999) (affirming summary judgment in favor of defendant on implied covenant claim, holding that "a cause of action for breach of the implied covenant cannot be maintained . . . in derogation of the express terms of the underlying

contract").  For the reasons explained above, the Rules and Disclosures expressly authorized HSBC to impose NSF fees on "each" presented item, precluding any claim for breach the covenant of good faith and fair dealing.  See Compl. Ex. A at 2.

### 3.    Plaintiff Does Not, And Cannot, State A Claim For Unjust Enrichment.

Plaintiff's claim for unjust enrichment fails because an express contract governs her relationship with HSBC.   "[I]t is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract."  Coty, Inc. v. L'Oreal S.A., 320 F. App'x 5, 6 (2d Cir. 2009).  Here, there is no dispute regarding the validity of the Rules or Disclosures or whether they govern HSBC's assessment of NSF fees.  Therefore, Plaintiff's claim for unjust enrichment should be dismissed with prejudice.  See Metro. Elec. Mfg. Co. v. Herbert Constr. Co., Inc., 583 N.Y.S.2d 497, 498 (1992) (dismissing unjust enrichment claim where express contract governed); accord 904 Tower Apartment LLC v. Mark Hotel LLC, 853 F. Supp. 2d 386, 399 (S.D.N.Y. 2012) ("Plaintiffs' claim for unjust enrichment is dismissed because the Agreements govern the relationship between the parties."); Arthur Props., S.A. v. ABA Gallery, Inc., 11 CIV. 4409 LAK, 2011 WL 5910192, at *4 (S.D.N.Y. Nov. 28, 2011) ("Where an express contract is conceded, as it is here, a plaintiff may not proceed also on a quasi-contract theory because it is foreclosed by the very existence of the express contract.").

### C.    Plaintiff's GBL § 349 Claim Also Fails Because It Is Based On Contractually Authorized Conduct.

In order to prevail on a GBL § 349 claim, a plaintiff must show that the act or practice at issue was "misleading in a material respect."  Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).  Such acts are assessed objectively on the basis of whether they are "likely to mislead a reasonable consumer acting reasonably under the circumstances . . . ."  Id.  Thus, a claim under

GBL § 349 will not lie where, as here, the allegedly deceptive activity is disclosed.  See, e.g., Morrissey v. Nextel Partners, Inc., 895 N.Y.S.2d 580, 586 (2010) ("Certainly, if the terms and conditions . . . were fully disclosed to any given customer prior to his or her purchase, it could not be said that any such customer suffered an injury as a result of the alleged deceptive practice."); Sands v. Ticketmaster-New York, Inc., 616 N.Y.S.2d 362, 363 (1994) (rejecting claim challenging fees as "excessive" where "there is no dispute that such fees are always disclosed").

As discussed above, the Rules and Disclosures expressly authorize HSBC to assess an NSF fee on each item, including multiple items presented to HSBC by non-party merchants for the same transaction.  As a result, assessing such fees cannot, as a matter of law, be deceptive or unfair under the GBL.  See, e.g., Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc., No. 11 CIV. 4509 RJS, 2013 WL 1385210, at *7 (S.D.N.Y. Mar. 18, 2013) (dismissing GBL claim, holding that "when the alleged deceptive act or practice is fully disclosed to a plaintiff, the 'deception' cannot amount to a materially misleading act or practice under Section 349").

### D.     Plaintiff's State Law Claims Are Also Barred By Federal Preemption Pursuant To The NBA And OCC Regulations.

Plaintiff's claims seek to regulate the manner in which HSBC charges non-interest depository fees, the manner in which HSBC processes transactions, and the sufficiency of HSBC's disclosures.  Each of the foregoing involves a core banking function for a national bank and is not subject to regulation under state law.  See 12 C.F.R. § 7.4002(b)(2); 12 C.F.R. § 7.4007(a)-(b); 12 C.F.R. § 7.4009; 12 U.S.C. § 24 (Seventh).  Accordingly, the NBA and OCC regulations preempt Plaintiff's claims.

The NBA was enacted to establish a national banking system, free from excessive state regulation.  See Marquette Nat'l Bank v. First of Omaha Serv. Corp., 439 U.S. 299, 314 (1978).

Consistent with governing conflict preemption standards, "[s]tate regulation of banking is permissible when it 'does not prevent or significantly interfere with the national bank's exercise of its powers.'" Bank of Am. v. City & Cty. of S.F., 309 F.3d 551, 558-59 (9th Cir. 2002) (quoting Barnett Bank, N.A. v. Nelson, 517 U.S. 25, 33 (1996)). "State attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the [NBA], or impair the efficiency of national banks to discharge their duties." Bank of Am., 309 F.3d at 561 (citing First Nat'l Bank v. California, 262 U.S. 366, 369 (1923)). "[W]hen state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." Watters v. Wachovia Bank, N.A., 550 U.S. 1, 12 (2007).

The NBA expressly authorizes national banks to "receiv[e] deposits" and "to exercise . . . all such incidental powers as shall be necessary to carry on the business of banking," and the OCC may "authorize additional activities if encompassed by a reasonable interpretation of § 24 (Seventh)." Bank of Am., 309 F.3d at 562 (citation omitted). Indeed, "[t]he OCC can issue legislative rules that preempt state law." Ellsworth v. U.S. Bank, N.A., 908 F. Supp. 2d 1063, 1075 (N.D. Cal. 2012). Pursuant to OCC regulations, "[a] national bank may receive deposits and engage in any activity incidental to receiving deposits, including issuing evidence of accounts, subject to such terms, conditions, and limitations prescribed by the [OCC] and any other applicable Federal law." 12 C.F.R. § 7.4007(a). Among other things, "[a] national bank may exercise its deposit-taking powers without regard to state law limitations concerning: . . . (2) [c]hecking accounts; (3) [d]isclosure requirements; [and] (4) [f]unds availability." 12 C.F.R. § 7.4007(b)(2)-(4). A national bank is also expressly authorized to assess "non-interest charges and fees, including deposit account service charges." 12 C.F.R. § 7.4002(a). "The establishment

of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles."  12 C.F.R. § 7.4002(b)(2).

Courts have repeatedly rejected state law claims challenging the assessment of fees, including overdraft fees, charged by national banks.  See, e.g., Montgomery v. Bank of Am. Corp., 515 F. Supp. 2d 1106, 1113 (C.D. Cal. 2007) (holding that "plaintiff's state law claims, which are all based on the amount of and means of disclosure of [overdraft] fees assessed by defendants, are preempted by 12 C.F.R. § 7.4002"); Monroe Retail, Inc. v. Charter One Bank, N.A., 624 F. Supp. 2d 677, 679, 686-88 (N.D. Ohio 2007) (holding that creditor-garnishors' argument that "banks may not impose additional garnishment fees on customer accounts prior to full recovery" of amount owed was preempted); Bank of Am., 309 F.3d at 564 (holding that § 7.4002 preempted conflicting state limitations on the authority of national banks to collect fees for providing deposit and lending-related ATM services); Wells Fargo Bank of Texas N.A. v. James, 321 F.3d 488, 495 (5th Cir. 2003) (holding that state law prohibiting a bank from charging check cashing fees was in "irreconcilable conflict" with § 7.4002(a)).

Similarly, courts routinely dismiss claims challenging national banks' disclosures under state law.  See, e.g., Franklin Nat'l Bank v. New York, 347 U.S. 373, 377-79 (1954) (holding that the NBA preempted a state statute prohibiting national banks from using the word "saving" or "savings" in advertising); Rose v. Chase Bank USA, N.A., 513 F.3d 1032, 1037-38 (9th Cir. 2008) (concluding that state law requirements for convenience check disclosures were preempted by the NBA and the OCC's regulations); Am. Bankers Ass'n v. Lockyer, 239 F. Supp. 2d 1000, 1018 (E.D. Cal. 2002) (holding that a state statute requiring credit card disclosures regarding minimum payments was preempted); Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1003-09

(9th Cir. 2008) (holding that regulations for federal thrifts, which the OCC regulations were

patterned after, preempted claims under California law alleging misrepresentations in advertising

and disclosure documents).

Plaintiff's state law claims are therefore barred by federal preemption.  Through these

claims, Plaintiff seeks damages and restitution based on the assessment of NSFs fees on

payments that were presented to HSBC when Plaintiff lacked sufficient available funds.  Plaintiff

also seeks to dictate the manner in which HSBC discloses its practices.  (See Compl. ¶¶ 35-39.)

Such claims interfere with HSBC's power to receive deposits and engage in the business of

banking under the NBA; impermissibly seek to regulate bank deposit-taking and operational

powers, including by imposing disclosure requirements for checking accounts, under 12 C.F.R.

§§ 7.4007; and improperly impose conflicting state standards on the establishment of charges

and fees and the method of calculating them pursuant to 12 C.F.R. § 7.4002.

The Ninth Circuit's decision in Gutierrez v. Wells Fargo Bank, NA, 704 F.3d 712 (9th

Cir. 2012), is particularly instructive.  In Gutierrez, plaintiffs challenged the disclosure of

defendant bank's high-to-low posting of transactions under state unfair competition statutes.  The

Ninth Circuit held that those claims were preempted and reasoned that the "requirement to make

particular disclosures falls squarely within the purview of federal banking regulation and is

expressly preempted: 'A national bank may exercise its deposit-taking powers without regard to

state law limitations concerning,' among other things, 'disclosure requirements.'"  Id. at 726

(quoting C.F.R. § 7.4007(b)(3)).  The Ninth Circuit made clear that, just as a district court cannot

require a bank to make specific disclosures, unfair competition claims "cannot impose liability

simply based on the bank's failure to disclose its chosen posting method" because it "leads to the

same result as mandating specific disclosures."  Id.  Accordingly, Plaintiff's attempts to force

HSBC to adopt specific disclosures used by one or more other financial institutions are without merit.

At bottom, Plaintiff's claims seek to regulate HSBC's NSF fee disclosures, the manner in which HSBC charges NSF fees, and the manner in which HSBC process transactions. Accordingly, consistent with the authorities discussed above, Plaintiff's claims are barred by federal preemption and should be dismissed with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, HSBC respectfully requests that the Court grant the Motion and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated: New York, New York          STROOCK & STROOCK & LAVAN LLP
       March 6, 2020

                                   By: */s/ James L. Bernard*

                                   James L. Bernard
                                   Raymond A. Garcia
                                   180 Maiden Lane
                                   New York, New York 10038
                                   Telephone:  212-806-5400
                                   Email:  jbernard@stroock.com
                                   Email:  rgarcia@stroock.com

                                   *Attorneys for Defendant*
                                   *HSBC Bank USA, N.A.*

LA 52297118