**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICE CHAMBERS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HSBC BANK USA, N.A.<br><br>Defendant. | Civil Action No. 19-cv-10436 |

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................3

III.  LEGAL STANDARD ..........................................................................................4

IV.  ARGUMENT .......................................................................................................4

    A.  HSBC Breached the Contract When It Charged More Than One Fee on the
          Same Item ................................................................................................4

          1.  Banks and Credit Unions Large and Small Use the Term "Item" in
                 the Commonsense, Plain Way that Plaintiff Urges......................................7

          2.  NACHA Itself Uses a Similar Term ("Entry") in the Same Way
                 and Bars Authorizations or Orders from Anyone Except
                 Accountholders ................................................................................8

          3.  HSBC's Arguments are Not Persuasive ...................................................11

    B.  HSBC's NSF Fee Practices Violate the Implied Covenant of Good Faith
          and Fair Dealing...........................................................................................12

    C.  Plaintiff's Alternative Unjust Enrichment Claim Remains Viable......................15

    D.  HSBC's Misrepresentations Violate General Business Law § 349. ....................18

    E.  Plaintiff's Claims are not Preempted ...................................................................21

V.  CONCLUSION....................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**

*904 Tower Apartment LLC v. Mark Hotel LLC*,
   853 F. Supp. 2d 386 (S.D.N.Y. 2012) ........................................................................ 18

*Baldanzi v. WFC Holdings Corp.*,
   No. 07-cv-9551-LTS, 2008 WL 4924987 (S.D.N.Y. Nov. 14, 2008) ...................................... 22

*Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner,
   et al.* 517 U.S. 25 (1996) ........................................................................................ 22, 23

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*,
   347 F.Supp.2d 1 (S.D.N.Y. 2004) ................................................................................ 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 4

*Benex LC v. First Data Merch. Servs. Corp.*,
   No. 14-cv-6393-JS, 2016 WL 1069657 (E.D.N.Y. Mar. 16, 2016) ...................................... 13

*Bruesewitz v. Wyeth LLC*,
   562 U.S. 223 (2011) ................................................................................................. 22

*Chiste v. Hotels.com L.P.*
   756 F. Supp. 2d 382 (S.D.N.Y. 2010) ........................................................................... 19

*Coty Inc. v. L'Oreal S.A.*,
   No. 07 CV 6206(KMW), 2008 WL 331360 (S.D.N.Y. Feb. 4, 2008) ................................... 17

*Coty, Inc. v. L'Oreal S.A.*,
   320 F. App'x 5 (2d Cir. 2009) ............................................................................... 15, 17

*Cox v. Spirit Airlines, Inc.*,
   18-3484, 2019 WL 4263385 (2d Cir. Sept. 10, 2019) .......................................................... 6

*Cuomo v. Clearing House Ass'n, L.L.C.*,
   557 U.S. 519 (2009) ................................................................................................. 21

*Dasher v. RBC Bank (In re Checking Account Overdraft Litig.)*,
   No. 1:10-cv-22190-JLK, 2016 WL 5848729 (S.D. Fla. Feb. 8, 2016) ................................... 15

*Dillon v. BMO Harris Bank, N.A.*,
   856 F.3d 328 (4th Cir. 2017) ............................................................................... 8, 9, 10

*Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*,
   949 N.Y.S.2d 115 (2012) ........................................................................................... 12

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) .................................................................................... 4, 5

*Fishoff v. Coty Inc.*,
   634 F.3d 647 (2d Cir. 2011) ....................................................................................... 13

*Goldman v. Simon Property Group, Inc.*,
   869 N.Y.S.2d 125 (2d Dept. 2008) ............................................................................. 20

*Gutierrez v. Wells Fargo Bank, NA*,
   704 F.3d 712 (9th Cir. 2012) ..................................................................................... 24

*Gutierrez v. Wells Fargo Bank, NA.*,
   730 F. Supp. 2d 1080 (N.D. Cal. 2010) ....................................................................... 14

*Hanjy v. Arvest Bank*,
   94 F. Supp. 3d 1012 (E.D. Ark. 2015) ......................................................................... 15

*In re Checking Account Overdraft Litig.*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................ 15, 20

*In re Checking Account Overdraft Litig.*,
    No. 1:09-MD-02036-JLK, 2013 WL 5774287 (S.D. Fla. Oct. 24, 2013) ............................... 15

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
    1 F. Supp. 3d 34 ....................................................................................... 13, 21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11-md-2262-NRB, 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015).................................... 21

*Joshi v. Trs of Columbia Univ. in City of N.Y.*,
    2018 WL 2417846 (S.D.N.Y. May 29, 2018) .......................................................... 13

*Kelly v. Schmidberger*,
    806 F.2d 44 (2d Cir. 1986)............................................................................ 17

*King v. Carolina First Bank*,
    26 F. Supp. 3d 510 (D.S.C. 2014)..................................................................... 15

*Lambert v. Navy Federal Credit Union*,
    No. 19-cv-103-LO, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019)....................................... 6

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010)........................................................................... 6

*Levin v HSBC Bank USA, NA*,
    No. 65062/2011, 2012 WL 7964121 (N.Y. Sup. Ct. June 26, 2012) .................................... 13

*Maalouf v. Salomon Smith Barney, Inc.*,
    No. 02 CIV. 4770 (SAS), 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003)................................. 17

*Miller v. Wells Fargo Bank, N.A.*,
    994 F. Supp. 2d 542 (S.D.N.Y. 2014).................................................................. 21

*Morris v. Bank of America, N.A.*,
    No. 18-cv-157-RJC-DSC, 2019 WL 1274928 (W.D.N.C. Jan. 8, 2019) .................................. 2

*Morrissey v. Nextel Partners, Inc.*
    895 N.Y.S.2d 580 (2010).......................................................................... 19, 20

*Nat'l Bank v. Commonwealth*,
    9 Wall. 353, 19 L.Ed. 701 (1870) .................................................................... 21

*Negrin v. Norwest Mortg., Inc.*,
    700 N.Y.S.2d 184 (2d Dept. 1999) .................................................................... 20

*Nickerson v. Commc'n Workers of Am. Local 1171*,
    No. 504CV00875NPM, 2005 WL 1331122 (N.D.N.Y. May 31, 2005)...................................... 17

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
    478 F. Supp. 2d 496 (S.D.N.Y. 2007)................................................................. 13

*People ex rel. Schneiderman v. Orbital Publ'g Grp.*,
    21 N.Y.S.3d 573 (N.Y. Sup. Ct. 2015) ............................................................... 20

*Segovia v. Vitamin Shoppe, Inc.*,
    No. 14-CV-7061-NSR, 2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) .................................... 20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate ins. Co.*,
    559 U.S. 393 (2010).................................................................................. 16

*Singer v. Xipto Inc.*,
    852 F. Supp. 2d 416 (S.D.N.Y. 2012).................................................................. 16

*Southern Coal Corp. v. Drummond Coal Sales, Inc.*, No. 1:17-CV-1104-AT,
    2017 WL 7550765 (N.D. Ga. Nov. 15, 2017) .......................................................... 16

*St. John's University, New York v. Bolton*,
   757 F. Supp. 2d 144 (E.D.N.Y. 2010) ........................................................ 17
*Stephens Inc. v. Flexiti Fin. Inc.*,
   No. 18-cv-8185-JPO, 2019 WL 2725627 (S.D.N.Y. July 1, 2019) ........................ 13
*Stewart v. Riviana Foods Inc.*,
   No. 16-cv-6157-NSR, 2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) .................... 22
*Tasini v. AOL, Inc.*,
   505 F. App'x 45 (2d Cir. 2009) ............................................................ 15
*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ................................................................. 7
*Wachovia Bank, N.A. v. Burke*,
   414 F.3d 305 (2d Cir. 2005) ................................................................ 23
*Walker v. People's United Bank*,
   305 F. Supp. 3d 365 (D. Conn. 2018) ...................................................... 22
*Watters v. Wachovia Bank, N.A.*,
   550 U.S. 1 (2007) ........................................................................... 21
*White v. Wachovia Bank, N.A.*,
   563 F. Supp. 2d 1358, 1364 (N.D. Ga. 2008) ........................................ 14, 15

**Statutes**

15 U.S.C. § 1693e ................................................................................. 9
General Business Law § 349 ............................................................ passim

**Rules**

Federal Rule of Civil Procedure 8 ................................................ 16, 17, 18

**Regulations**

12 C.F.R. § 7.4002 ............................................................................. 23
12 C.F.R. § 7.4007 ......................................................................... 22, 23
Guidance on Unfair or Deceptive Acts or Practices,
   2002 WL 521380 n. 2 (Mar. 22, 2002) ............................................... 23, 24

**Other Authorities**

5 Fed. Prac. & Proc. Civ. § 1204 (3d ed.) ................................................ 16

## I.      INTRODUCTION

This matter involves a straightforward dispute regarding the meaning of a key term in HSBC, N.A.'s ("HSBC" or "Bank") Deposit Agreement and Fee Schedule (collectively, "Account Documents"). The Parties agree that the Bank may assess a *single* Non-sufficient Funds ("NSF") Fee[1] on "items" that are returned due to insufficient funds in a consumer's bank account. The Parties disagree, however, on the meaning of the term "item" as it is used in the contract. Plaintiff asserts that an "item" is the same "item" when it is reprocessed a second or third time after an initial return for insufficient funds. The Bank contends that each time it reprocesses this same "item" for payment, it transmogrifies into a *new* "item" that can be charged a *new* NSF Fee. Because Plaintiff has pled a reasonable meaning of the disputed term to support her claims; because the adhesion contract must be read in favor of the non-drafting party; and because the contract supports Plaintiff's interpretation of "item," dismissal of Plaintiff's claims is inappropriate. At best for HSBC, the term "item" is ambiguous and must be construed in favor of the Plaintiff. This is precisely what, just two weeks ago, Judge Valerie Caproni held in an identical case with virtually identical contract terms. *See Perks et al v. TD Bank, N.A*, Case No. 1:18-cv-11176-VEC (S.D.N.Y. March 17, 2020) (attached as Berger Decl. Supp. Opp'n to Mot. to Dismiss, **Exhibit 1**) (denying a motion to dismiss because "the definition of 'item' is ambiguous with regard to whether a resubmission of an ACH transaction is a separate item or is part of the same initial ACH transaction.")  Respectfully, the same result should apply here.

---

[1] NSF Fees, assessed when a bank *rejects* an attempted payment, are distinct from overdraft fees ("OD Fees"), assessed when a bank *authorizes and pays* a transaction even though there are insufficient funds. When a bank pays an overdraft, a bank advances funds in return for the OD Fee it assesses. When, on the other hand, a bank *rejects* an electronic or check payment for insufficient funds it does not remit payment for that item. Merchants may repeatedly resubmit the same item for payment, though the customer has no role in this process.

The practice at issue in this litigation is the assessment of multiple $35 NSF Fees on the same (often small-dollar) electronic transactions or checks when merchants resubmit the same item to be reprocessed again and again after initially being returned for insufficient funds (for example, when HSBC charged $70 in fees for each of Plaintiff's attempted ACH transactions). The practice is egregious and punitive. Because the multiple assessment practice is so extreme, leading American banks like JP Morgan Chase refuse to engage in it. Other banks that use this practice explicitly disclose it. HSBC makes no such disclosures, and, instead, promises the opposite.

Judge Caproni's decision in *Perks* in merely the latest of many decisions denying motions to dismiss in identical cases—none of which HSBC mentions in its Motion. Other courts have recently considered similar disclosures and the identical fee practice and have routinely denied financial institutions' motions to dismiss. *See Morris v. Bank of America, N.A.*, No. 18-cv-157-RJC-DSC, 2019 WL 1274928 (W.D.N.C. Jan. 8, 2019), *report and recommendation adopted in part*, 2019 WL 1421166 (W.D.N.C. Mar. 29, 2019) (denying motion to dismiss where plaintiffs challenged the assessment of multiple NSF Fees on the same item); *Garcia v. UMB Bank NA*, No. 1916-CV01874 (Jackson Co. Mo. Circuit Court Oct. 18, 2019), Berger Decl., **Exhibit 2** (same); *Tisdale v. Wilson Bank and Trust*, No. 19-400-BC (Davidson Co. Tenn. Chancery Court Oct. 17, 2019), Berger Decl., **Exhibit 3** (same); *Tannehill v. Simmons Bank*, No. 3:19-cv-140-DPM (E.D. Ark. Oct. 21, 2019) (ECF No. 23), Berger Decl., **Exhibit 4** (same); *Noe v. City Nat'l Bank of W. Va.*, No. 3:19-cv-0690 (S.D. W. Va. Feb. 19, 2020) (ECF No. 17), Berger Decl., **Exhibit 5** (same); *Perri v. Notre Dame Federal Credit Union*, No. 71C01–1909–PL–000332 (Ind. Cir. Ct. St. Joseph Cty. March 2, 2020), Berger Decl., **Exhibit 6** (same); *Ingram v. Teachers Credit Union*, No. 49D01–1908–PL–O35431 (Ind. Super. Ct. Marion Cty. Feb. 18, 2020), Berger Decl., **Exhibit 7** (same); *Almon v. Independence Bank*, No. 19-CI-00817 (Ky. Cir. Ct., McCracken County Mar.

18, 2020), Berger Decl., **Exhibit 8** (with respect to the meaning of the term "item," the court held that "[b]oth [parties'] interpretations are reasonable; therefore, the Court finds that the contract is ambiguous").

Here, as in those cases, the "Account Documents" (exhibits A and B to the Complaint) state that HSBC will assess a single $35 NSF Fee per "item." As Ms. Chambers alleges, "item" has a well-understood industry meaning, in which "item" refers to an *accountholder's* instruction for payment, not a merchant's attempt to collect on that payment. As discussed below, this is consistent with the rules governing the National Automated Clearing House Association ("NACHA") payment network used to process electronic transactions. There is no dispute that Ms. Chambers made only one instruction for payment, even if that payment was repeatedly processed by a merchant. Therefore, her attempted ACH transaction was only one "item" and HSBC was only authorized to charge one NSF Fee on that item.

## II.    FACTUAL BACKGROUND

Plaintiff Patrice Chambers lives in Patchogue, New York and has a checking account with Defendant HSBC Bank. Compl. ¶ 5. In May and June 2019, she attempted to make two separate payments, one to Santander and the other to Geico. *Id.* ¶¶ 14, 19. She did not have enough money in her account to cover either transaction, so HSBC rejected payment and charged her a $35 fee, as permitted by the Account Documents. *Id.* ¶¶ 15, 20. A few days after rejecting each payment, HSBC attempted to reprocess each transaction, which appears as a "RETRY PYMT" on Chambers's bank statements. *Id.* ¶ 16, 21. Even though Chambers did not ask HSBC to reprocess these payments, it still charged her another $35 fee for each attempt, in violation of the adhesion Account Documents that HSBC drafted, and HSBC's representations about its fee practices. *Id.* ¶¶ 16, 21, 24-34.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), the court should dismiss a complaint only if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a Rule 12(b)(6) motion, the court must "accept[ ] as true all factual claims in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

### IV.    ARGUMENT

#### A.    HSBC Breached the Contract When It Charged More Than One Fee on the Same Item

The Account Documents do not authorize more than one NSF Fee on the same item. There are two contractual provisions that compel this finding. First, according to the Fee Schedule, at most a single $35 NSF Fee will be assessed "**for each withdrawal, check, electronic funds transfer or other item that overdraws your account.** A fee is charged whether we pay or return the item." Compl., Ex. A (emphasis added).

The same check, automatic bill payment, or other electronic payment on an account is not reasonably a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item. The Account Documents do not say that the same item is eligible to incur multiple NSF Fees. To the contrary, the HSBC Deposit Agreement says that an "item . . . includes" all of the following, all of which are created only by the affirmative action of an accountholder:

> An "item" includes checks, substitute checks, remotely created checks, withdrawal slips or other in-person transfers or withdrawals, service charges, electronic items or transactions, including withdrawals made from an Automated Teller Machine, everyday or recurring debit card transactions, pre-authorized payments or transfers, ACH transactions, telephone initiated transfers, online banking transfers or bill payment instructions, and any other instruments or instructions for the payment, transfer or withdrawal of funds including an image or photocopy of any of these.

Compl., Ex. B at 4.

This disclosure indicates an "item" includes "ACH transactions" (which is the transaction type on which Plaintiff was assessed NSF Fees) and "and any other instruments or instructions for the payment, transfer or withdrawal of funds." Here, Plaintiff made only a single "ACH transaction" each time—she wanted to pay Santander or Geico only one time and she made only one instruction to pay each entity. Common sense, industry usage (as discussed below), and contractual context must mean an "item" cannot become a new "item" when HSBC returns and reprocesses it one or more times.

Interpreting virtually identical contract provisions, that is exactly what Judge Caproni determined in *Perks*. In that case, just like this one, the definition of the term "item" included "a[n] . . . ACH transaction . . . and any other instruction or order for the payment, transfer, deposit or withdrawal of funds." Berger Decl., Ex. 1 at 4-5. The court determined that "the definition of 'item' is ambiguous with regard to whether a resubmission of an ACH transaction is a separate item or is part of the same initial ACH transaction, and that ambiguity must be read in favor of Plaintiffs at this stage. Because Plaintiffs' proposed construction is a reasonable construction of the Agreement, Plaintiffs have sufficiently alleged a breach resulting from multiple overdraft charges imposed as a result of resubmissions of a single ACH transaction." *Id*.

This basic premise—that it is at best ambiguous whether an "item" becomes a new "item" when it is re-presented—has repeatedly been upheld in several other cases totally ignored by HSBC. For example, this is *exactly* what the court in *Perri*, Berger Decl., Ex. 5, recently found in denying a motion to dismiss in a case involving an essentially identical claim. The court reasoned:

> The Court agrees with Plaintiff that ultimately **these are the same item or transaction and they do not morph into a separate or new item simply because the third party presents the transaction for payment a second or third time.** It

is incumbent on Defendant to identify language in its contract with Plaintiff that unambiguously provides that a separate or additional NSF or overdraft fee could be imposed on the same transaction. The Agreement before the Court in this case does not do so.

*Id.* at 6 (emphasis added).

In another context, the Second Circuit recently reiterated the bedrock principle of contract interpretation—that where a term is ambiguous to a "reasonably intelligent person," dismissal is inappropriate. *Cox v. Spirit Airlines, Inc.*, No. 18-3484, 2019 WL 4263385 (2d Cir. Sept. 10, 2019). That dispute involved whether the "price" paid by Spirit Airlines customers included carriage of plaintiffs' carry-on items. The Second Circuit held that the key term "price" (like "item" here) was ambiguous and reversed dismissal of plaintiffs' complaint. *Id.* According to the panel, "[a]n ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person . . . who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (citing *Law Debenture Trust Co. of New York v. Maverick Tube Corp.,* 595 F.3d 458, 466 (2d Cir. 2010)). Because Plaintiff alleges the "usages and terminology as generally understood" means that the term "item" encompasses all iterations of the same payment, dismissal is inappropriate.

Ignoring a multitude of cases to the contrary, HSBC relies heavily on a non-binding decision from a district court in a different Circuit in *Lambert v. Navy Federal Credit Union,* No. 19-cv-103-LO, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019). That reliance is misplaced, and Judge Caproni has already distinguished that case. *See Perks*, at p. 6 (distinguishing *Lambert* because, *inter alia*, the contract at issue in *Perks v. TD Bank* "does [not] authorize fees on all ACH debits; but rather on "[an] ACH transaction," which could encompass all resubmissions associated with a single transaction."). In sum, the Navy Federal contract at issue in *Lambert* differs from HSBC's in fundamental ways. In addition, the decision in *Lambert* overlooked the reality that the term

"item" has a common, well-understood meaning amongst consumers and other banks and credit unions. Finally, *Lambert* failed to follow or distinguish the more persuasive opinions in *Morris* and other cases, and its holding is therefore of questionable value; the decision is currently on appeal.

### 1. Banks and Credit Unions Large and Small Use the Term "Item" in the Commonsense, Plain Way that Plaintiff Urges

HSBC's multiple NSF Fee practice is not universal. For example, JP Morgan Chase ("Chase") charges a maximum of one NSF Fee per item. Compl. ¶ 11. And as indicated by Chase's printed disclosures, an "item" maintains its integrity even if multiple processes are effected on it: "If we return the same item multiple times, we will only charge you one Returned Item Fee for that item within a 30-day period." Compl. fn. 1.

First Citizens Bank, another major bank, engages in the same abusive multiple fee practice as HSBC, however (unlike HSBC) it expressly provides in its deposit agreement that "[b]ecause we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item." Compendium of Industry NSF Fee Disclosures, Berger Decl., Ex. 9 at 1 (emphasis added).[2] First Financial Bank also clarifies its practice and the meaning of "item," noting "[m]erchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly." *Id.* at 2. There are many other examples, as indicated in the Compendium of Disclosures attached as

---

[2] The Court may consider these documents because the Complaint references common usage of the terms and practices elsewhere in the banking industry. *See Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016); Compl. ¶¶ 35-39 (referencing common banking practices and providing examples). In the alternative, the Court should accept as true Plaintiff's allegations about these practices. *Id.*

Exhibit 9 to the Berger Declaration. These disclosures are important for at least two reasons. First, they indicate that when banks and credit unions assess more than one NSF Fee on a single item— the precise practice challenged here—they expressly disclose what they are doing. Second, the disclosures show there is a broad usage throughout the industry where "item" means what Plaintiff says it means in the absence of contract language defining that key term otherwise. Indeed, the sample disclosures reproduced above and in the Compendium of Disclosures would be nonsensical if the undefined term "item" had the contorted meaning that HSBC now tries to impute to it: that an "item" becomes a new "item" each time it is reprocessed. It is HSBC, not Plaintiff, that offers an unusual, unanticipated definition of the common term "item," one the Court should say is unreasonable when construing the contract.

In short, the Complaint alleges the existence of an industry practice that directly contradicts HSBC's interpretation of the contract. Those allegations—which the Court at this juncture must accept as true—establish not only an industry practice of clearly disclosing the imposition of multiple fees for resubmitted payment requests, but also make clear that the term "item" is used in a manner unambiguously contrary to HSBC's reading of the term here.

### 2. NACHA Itself Uses a Similar Term ("Entry") in the Same Way and Bars Authorizations or Orders from Anyone Except Accountholders

Ms. Chambers's attempted payments to Geico and Santander took place over the National Automated Clearinghouse Association ("NACHA"), which is governed by the NACHA Rules. NACHA is "a transaction processing system that facilitates electronic transfer of funds between financial institutions, usually on behalf of account holders." *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 328, 330 (4th Cir. 2017). HSBC's Deposit Agreement expressly incorporates the NACHA Rules into its contract: "These Rules shall be governed by and interpreted according to federal law, and by applicable state law, clearing house rules, ACH rules and general commercial bank

practices applicable to the services provided, to the extent not superseded by federal law." Compl., Ex. B at 1. The NACHA Rules clearly support Plaintiff's contract interpretation of the meaning of the term "item" or "ACH transaction."

To *initiate* an ACH payment from a consumer's account, a merchant must first obtain the consumer's account information and authorization to transfer funds. *See* 15 U.S.C. § 1693e. The Electronic Funds Transfers Act requires that the consumer's authorization be "in writing." *Id.* Once authorization is obtained, the merchant's financial institution can submit a request for payment to the ACH network, which is forwarded by the network to the consumer's bank or credit union. *See History of Nacha and the ACH Network*, NACHA, *captured at* https://perma.cc/YJW5-Q6NY (Apr. 20, 2019). If all goes smoothly, the consumer's bank or credit union will then debit the consumer's account for the amount of the payment. *See id.*

The NACHA Rules allow a financial institution to "return" an ACH payment request for "any reason." NACHA, Operating Rules & Guidelines § 3.8 (2013). Under NACHA's terminology, a request for payment via the ACH network is called an "*Entry.*" A financial institution's return of an "Entry" without payment is called a "*Return Entry*." *See id.* §§ 8.33, 8.79. When an entry is returned for insufficient funds, NACHA's rules allow a merchant to make additional attempts to obtain payment by "re-presenting" (or "reinitiating") the returned entry. *See id.* § 2.12.4.2. To ensure that the receiving financial institution recognizes that the merchant's payment request is a "re-presented" entry rather than a new one, the request must "contain the identical data as the original" entry and include the label "RETRY PYMT." *See id.* App. 4. The rules prohibit a merchant from altering a previously returned entry to look like a new entry. *Id.*

In addition to any fee that the customer's bank or credit union may charge for a returned entry, the merchant whose payment request was returned may also impose its own fee. NACHA's

rules, however, permit the merchant to charge only <u>one</u> such fee for a single "returned entry," *even if the merchant re-presents that entry multiple times*. *See* NACHA Operating Rules & Guideline § 2.14.4. Thus, the rules thus make clear that a "re-presented" entry is just another request for payment of the original entry, not a separate entry (or "item") that could trigger an additional fee.

NACHA Rules also make clear than an "Entry" is the same "Entry" when reprocessed *unless* the merchant receives a *new authorization from the consumer* for the payment amount:

> [A] debit Entry will not be treated as a reinitiated Entry if:
>
> - the debit Entry is one in a series of preauthorized, recurring debit Entries and is not contingent upon whether an earlier debit Entry in the recurring series has been Returned; or,
>
> - the Originator obtains a new authorization for the debit Entry after it receives the original Return Entry.

*Id*. The NACHA Rules, in other words, make clear that such authorizations can only come from accountholders, not from merchants, and indeed it is fraudulent for merchants to code transactions otherwise. This directly rebuts HSBC's argument that the merchant (here, Geico or Santander) initiated a new, separate "item." Read in conjunction with the NACHA Rules, HSBC's contract does not authorize more than one NSF Fee on the same item. Indeed, at least one district court denied a motion to dismiss in an identical case on this basis. In *Tannehill v. Simmons Bank*, the plaintiff sued Simmons Bank over the assessment of more than NSF Fee on the same item, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. *See* Berger Decl., Ex. 4. Simmons Bank moved to dismiss, arguing that the contract permitted the fees. The Court denied the motion to dismiss, explaining that the parties' arguments, which concern both the contract's meaning and "the rather complicated ACH rules," meant "the Court [was] unable….to hold unequivocally at the threshold that [plaintiff's] breach claim fails as a matter of law." *Id* at *2.

### 3.   HSBC's Arguments are Not Persuasive

HSBC argues that the Account Documents "expressly" authorize HSBC to assess more than one NSF Fee on the same payment. They do no such thing. Indeed, HSBC's argument crumbles under the slightest examination. It relies on the two provisions Plaintiff relies upon above: that HSBC may charge an NSF Fee "[f]or each withdrawal, check, electronic funds transfer or other item" and the definition of "item," which includes "electronic items or transactions, including . . . pre-authorized payments or transfers, ACH transactions, and any other instruments or instructions for the payment, transfer or withdrawal of funds . . . ." Then it argues, "[t]hus, under the plain language of the Rules and Disclosures, each payment request made to HSBC is a separate 'item,' potentially subject to an NSF fee." Mot. at 6. But HSBC counsel's bare assertion—that the second payment requests were "separate items"—is a *non sequitur* that finds no support in the contract. Why is the resubmission of the same ACH transaction a "separate item?" For all the reasons above, that is not a plausible reading of the contract. While the argument is at best unclear, if it is HSBC's argument that the *second* submission of the same ACH transaction is encompassed by the catch-all "any other instruments or instructions for the payment, transfer or withdrawal of funds," and it is therefore a new item, Judge Caproni has already rejected this torturous argument when analyzing TD Bank's nearly identical contract language. "Although it is plausible to read '[an] ACH transaction' as referring to the original submission and 'any other instruction or order' as referring to any resubmission of an ACH transaction, it is just as plausible to read 'other' orders as meaning orders that are not one of the previously enumerated types of transaction and thus that '[an] ACH transaction' necessarily refers to both the original submission and any subsequent resubmission of the transaction." *Perks*, Berger Decl., Ex. 1 at 4-5.

The analogy drawn by HSBC to checks reveals the flaw in the Bank's argument. It argues

that "when Geico and Santander presented their respective requests for payment a second time, 'each' of those requests were new ACH items eligible for a separate NSF fee—just as a second check would be a new check even if it was submitted by the same merchant, in the same amount, for the same purpose." Mot. at 1. But there could be no "second check" unless an accountholder affirmatively took out a pen and wrote a new check. That is not true with respect to the ACH transactions at issue here, *which were reprocessed with no knowledge by, or affirmative action of, Plaintiff*. Instead, the more apt analogy is if a merchant repeatedly attempted to submit the *same* check over and over—and HSBC charged accountholders additional fees every time.

Lastly, HSBC also asserts that "[w]hen Plaintiff's account did not have sufficient funds at each point in time that the ACH transfers were presented against it, HSBC had the contractual right to return them and charge a fee 'each' time an item was presented." But that is simply a false recitation of what the contract says—and it takes the word "each" of its true place in the contract. The agreement never says "each time an item was presented"—like the legions of other bank disclosures Plaintiff alleges in the complaint and attaches hereto—it says "each" item. The plain promise is a single fee for "each item," no matter how many times it is returned—not a fee *each time* HSBC reprocesses the *same* item, as HSBC contends.

### B.  HSBC's NSF Fee Practices Violate the Implied Covenant of Good Faith and Fair Dealing

Ms. Chambers pleads an implied covenant claim as an alternative to her express breach of contract claim. If the Court concludes that Ms. Chambers has not adequately alleged a claim for express breach of contract, it should at least conclude that she has sufficiently alleged her breach of implied covenant of good faith and fair dealing claims.[3]

---

[3] The covenant of good faith and fair dealing is implicit in every contract and "encompasses any promise that a reasonable promisee would understand to be included." *See Elmhurst Dairy, Inc. v.*

"Where an allegation of a violation of the covenant of good faith and fair dealing alleges separate conduct from that underlying a concurrent claim for breach of contract, the two claims are not duplicative" and each can survive a motion to dismiss. *Stephens Inc. v. Flexiti Fin. Inc.*, No. 18-cv-8185-JPO, 2019 WL 2725627, at *7 (S.D.N.Y. July 1, 2019) (quoting *Joshi v. Trs of Columbia Univ. in City of N.Y.*, 2018 WL 2417846, at *7 (S.D.N.Y. May 29, 2018)). Here, Ms. Chambers's implied covenant claim is not duplicative. *See*, *e.g.*, Compl. ¶¶ 41-44, 63-72. Specifically, Ms. Chambers alleges that even if the term "item" does not have the express meaning that she claims, HSBC uses its discretion to define that term in an unfair and illogical manner. By so acting to maximize fee assessments, as Ms. Chambers alleges, HSBC fails to exercise its vast power fairly and in good faith. *Id*. ¶¶ 41-44.

Courts have consistently held that analogous allegations regarding transaction posting machinations, designed to maximize bank fees, sufficiently state breach of implied covenant claims. *See, e.g.*, *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.,* 1 F. Supp. 3d 34, 51 (E.D.N.Y. 2014) (allowing claim to proceed despite defendant's argument that it had contractual authority to post debit transactions from high to low); *Levin v HSBC Bank USA, NA*, No. 65062/2011, 2012 WL 7964121, at *15 (N.Y. Sup. Ct. June 26, 2012) (same); *Payday Advance Plus, Inc. v. Findwhat.com, Inc*., 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007) (implied covenant claim stated where defendant's actions increased its profits solely at its discretion and with no benefit to plaintiff, which was contrary to the expectations of a reasonable person); *accord Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (implied covenant claim stated where defendant,

---

*Bartlett Dairy, Inc.*, 949 N.Y.S.2d 115, 118 (2012). Thus, under New York law, a defendant who has "complied with the literal terms of the [parties'] contract" may nevertheless be liable for breaching its implicit duties if it so acts "in a way that undermines the purpose of the contract." *Benex LC v. First Data Merch. Servs. Corp.*, No. 14-cv-6393-JS, 2016 WL 1069657, at *3 (E.D.N.Y. Mar. 16, 2016) (quoting *In re HSBC*, 1 F. Supp. 3d at 51).

who had a "considerable amount of discretion in making" valuation determinations, arbitrarily assigned plaintiff a post hoc valuation, depriving plaintiff of the fruits of the contract).[4]

HSBC violates the implied covenant with its warped interpretation of the term "item" as referring to each *attempt* to pay an ACH transaction when there are multiple attempts to fulfill that payment absent any action by an accountholder to resubmit it. HSBC's illogical interpretation is unsupported by the contract language, and only serves to benefit HSBC (and harm its accountholders) by extracting egregious amounts of additional unwarranted fees without notice.

The courts in the following cases considered and rejected arguments just like those made by HSBC here concerning the covenant of good faith and fair dealing. Each provides persuasive authority in favor of denying the Motion. *Tannehill v. Simmons Bank*, Berger Decl., Ex. 4; *Noe v. City Nat. Bank of W. Va.*, *id.*, Ex. 5; *Perri v. Notre Dame Fed. Credit Union*, *id.*, Ex. 6; *Ingram v. Teachers Credit Union*, *id.*, Ex. 7; *Swift v. BancorpSouth, Inc. (In re Checking Account Overdraft Litig.)*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 154432, at *39 (S.D. Fla. Oct. 24, 2013) (denying summary judgment against good faith and fair dealing claim where contract afforded bank discretion which it was alleged to have exercised in bad faith); *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1364 (N.D. Ga. 2008) ("Court cannot find as a matter of law that the Deposit Agreement's statement that Wachovia 'may' post items 'in any order' expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely,

---

[4] *See also Gutierrez v. Wells Fargo Bank, NA.*, 730 F. Supp. 2d 1080, 1113 (N.D. Cal. 2010), *affd in part, rev'd in part and remanded sub nom.,* 704 F.3d 712 (9th Cir. 2012) (finding good faith and fair dealing claim where defendant-bank's language "'[w]e may choose' suggested to customers that the bank would either exercise discretion" to do something or not, when "[i]n fact, the bank knew good and well that it was already imposing and would continue to impose [the alleged] scheme").

and maximize overdraft fees"); *Dasher v. RBC Bank (In re Checking Account Overdraft Litig.)*, No. 1:10-cv-22190-JLK, 2016 WL 5848729, at *5 (S.D. Fla. Feb. 8, 2016) (same); *Hanjy v. Arvest Bank*, 94 F. Supp. 3d 1012, 1028 (E.D. Ark. 2015) (same); *King v. Carolina First Bank*, 26 F. Supp. 3d 510, 518 (D.S.C. 2014) (same).

At a minimum, whether HSBC acted in good faith "is a fact question that cannot be resolved at this stage." *White*, 563 F. Supp. 2d at 1364; *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1317 (S.D. Fla. 2010)(same); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 5774287, at *8 (S.D. Fla. Oct. 24, 2013) (denying summary judgment in debit card posting order case where bank's motives and whether the consequences of its actions were foreseeable to customers were disputed fact issues).

## C.   Plaintiff's Alternative Unjust Enrichment Claim Remains Viable

Plaintiff pleads a claim for unjust enrichment in the alternative to her contract claims. Compl. ¶ 74. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Tasini v. AOL, Inc.*, 505 F. App'x 45, 47 (2d Cir. 2009) (internal quotation omitted).

HSBC does not dispute the sufficiency of Plaintiff's unjust enrichment allegations. Instead, it falls back on a line of cases holding that under New York law, "*recovery* on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract." *Coty, Inc. v. L'Oreal S.A.*, 320 F. App'x 5, 6 (2d Cir. 2009) (emphasis added). *See also* Mot. at 11 (citing *Coty* and other cases that state this proposition). The Court should deny HSBC's motion to dismiss Plaintiff's unjust enrichment claim because

15

New York's common law prohibition on pleading inconsistent contract and unjust enrichment claims conflicts with and is preempted by Federal Rule of Civil Procedure 8(d).

Federal Rule of Civil Procedure 8(d) expressly permits a party to plead alternative and even inconsistent claims:

> **(2) *Alternative Statements of a Claim or Defense.*** A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> **(3) *Inconsistent Claims or Defenses.*** A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d)(2)-(3). It is well-established that "[t]he manner and details of pleading in the federal courts are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law to be applied in the particular action." *Law Governing Pleading in the Federal Courts*, 5 Fed. Prac. & Proc. Civ. § 1204 (3d ed.) (collecting cases).  Thus, state pleading standards that conflict with a procedural federal rule are preempted by Rule 8. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate ins. Co.*, 559 U.S. 393 (2010) (New York statute barring class actions in suits seeking statutory penalties preempted because it conflicts with Rule 23's class certification procedures).

In fact, this reasoning pervades a second line of cases that permit alternative or inconsistent claims in diversity cases under New York law, often recognizing that Rule 8 preempts conflicting state pleading standards.  *See, e.g., Southern Coal Corp. v. Drummond Coal Sales, Inc.*, No. 1:17-CV-1104-AT, 2017 WL 7550765, at *3 (N.D. Ga. Nov. 15, 2017) (denying motion to dismiss inconsistent quasi-contractual theories brought under New York substantive law in part because federal pleading standards controlled.); *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012) ("While a party generally may not simultaneously recover upon a

breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories."); *St. John's University, New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) ("Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims."); *Nickerson v. Commc'n Workers of Am. Local 1171*, No. 504CV00875NPM, 2005 WL 1331122, at *6 (N.D.N.Y. May 31, 2005) (rejecting applicability of New York standards for pleading defamation claims and holding that the allegations "need only comply with the liberal pleading requirements set forth in Fed. R. Civ. P. 8"); *Bazak Int'l Corp. v. Tarrant Apparel Grp.,* 347 F.Supp.2d 1, 4 (S.D.N.Y. 2004) (noting that a "plaintiff may simultaneously allege breach of contract and unjust enrichment in its complaint"); *Maalouf v. Salomon Smith Barney, Inc.*, No. 02 CIV. 4770 (SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003) ("The fact that [the plaintiff] may only *recover* on one claim, either contract or quasi-contract, certainly does not preclude him from *pleading* unjust enrichment in the alternative."); *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) (Rule 8's liberal pleading standards preempted state pleading requirements for defamation claims).

In contrast, many of the federal cases that HSBC cites either were decided after the factfinder ruled on a fully-developed record or just cursorily dismissed the unjust enrichment claims with little reasoning. In *Coty v. L'Oreal S.A.*, for example, the Second Circuit affirmed dismissal of the plaintiff's unjust enrichment claim as being inconsistent with breach of contract. But the district court ruling it affirmed explains that the parties had already arbitrated their contract dispute to a final judgment before Coty sued for unjust enrichment. *See Coty Inc. v. L'Oreal S.A.*, No. 07 CV 6206(KMW), 2008 WL 331360, at *3 (S.D.N.Y. Feb. 4, 2008). When those facts are revealed, the Second Circuit's ruling does not support HSBC's position in this case. HSBC also relies on cases in which the parties may not have focused on the interplay

17

between Rule 8 and the New York pleading standard.  *See, e.g., 904 Tower Apartment LLC v. Mark Hotel LLC*, 853 F. Supp. 2d 386, 399 (S.D.N.Y. 2012) (dismissing unjust enrichment allegations with little discussion).

Here, Plaintiff seeks to litigate two claims that are inconsistent and pleaded in the alternative, which is precisely what Rule 8 permits. Plaintiff submits that the Court should follow the line of cases recognizing that the Federal Rules of Civil Procedure control in federal court and deny HSBC's motion to dismiss her unjust enrichment claim.

### D.    HSBC's Misrepresentations Violate General Business Law § 349.

Plaintiff's final claim alleges that HSBC violated General Business Law section 349 by misrepresenting to consumers that it would charge just a single NSF Fee per item, when it actually charged multiple NSF Fees per item. Compl. ¶¶ 9-12, 27, 30-40, 80-86. HSBC's lone GBL-specific argument[5] for dismissal is that if the Account Documents disclose HSBC's practices, it could not have materially misled Plaintiff in violation of GBL section 349. Mot. at 11-12. HSBC's argument fails because the Account Documents do not support its interpretation and even if they did, dismissal still would be inappropriate.

HSBC reiterates its position that the Account Documents "expressly authorize it to assess an NSF fee on each item, including multiple items presented to HSBC by non-party merchants for the same transaction." Mot. at 12. As discussed above, the Account Documents contradict HSBC's position, say nothing about non-party merchants resubmitting the same item numerous times, and define an "item" in terms of a consumer's individual authorization to withdraw or transfer funds. *See, supra* § III.(A.). Because HSBC's argument is predicated on its

---

[5] HSBC's generalized preemption argument appears also to be aimed at the GBL claim and is addressed below.

misinterpretation of the Account Documents, the Court should deny HSBC's motion to dismiss this claim.

Even if the Court agrees with HSBC's crabbed reading of the Account Documents, it still should deny the motion to dismiss because Plaintiff's GBL claim hinges on whether the Account Documents are materially misleading, which is a different inquiry than how the Account Documents should be construed and whether HSBC violated them. Despite HSBC's suggestion to the contrary, a contract that discloses the terms of a transaction can form the basis of a GBL section 349 claim if the disclosure is materially misleading. For example, in *Chiste v. Hotels.com L.P.*, the court refused to dismiss a section 349 claim based on contract language that indisputably was shared with the plaintiff. 756 F. Supp. 2d 382, 405-06 (S.D.N.Y. 2010). There, the "peculiar (and syntactically difficult) wording of the Hotels.com User Agreement" allegedly masked that Hotels.com collected more in taxes than it was required to collect. *Id.* at 405. This was materially misleading because "a consumer would not necessarily expect that Hotels.com [would] collect more in taxes than it is actually required to collect by law, and [a consumer] might cho[ose] to do business elsewhere if that fact were disclosed. *Id.* at 406. Here, Plaintiff's allegations that HSBC's Account Documents are similarly misleading independently supports her section 349 claim.

In fact, the *Morrissey v. Nextel Partners, Inc.* case that HSBC relies on makes the same point. 895 N.Y.S.2d 580, 586 (2010). HSBC plucks language from *Morrissey* for the uncontroversial proposition that if the terms and conditions of a transaction are "fully disclosed" to the consumer, then the consumer could not have been injured by the allegedly deceptive practice. *See* Mot. at 12 (citing *Morrissey*, 895 N.Y.S.2d at 586). But *Morrissey* also makes clear that where the terms and conditions are disclosed in a misleading way, a GBL claim remains

19

viable. Just two paragraphs after the discussion HSBC cites, the Appellate Division held the lower court should have certified a GBL class on the theory that the terms and conditions that Nextel actually disclosed to consumers were nonetheless materially misleading. *Morrissey*, 895 N.Y.S.2d at 586-87 ("Whether the location and typeface of the spending limit fee increase disclosure was deceptive is an issue common to all members of the proposed class, since the documents the received contained the identical notice."). Because HSBC's sole argument for dismissal is fundamentally flawed, the Court should deny its motion.

Regardless, whether the Account Documents are materially misleading is a fact question appropriately determined at summary judgment or trial. *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061-NSR, 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017); *People ex rel. Schneiderman v. Orbital Publ'g Grp.*, 21 N.Y.S.3d 573, 586 (N.Y. Sup. Ct. 2015). Thus, Plaintiff's allegations are sufficient at the pleading stage. *See e.g. In re Checking Account Overdraft Litig.*, 694 F.Supp.2d 1302, 1325 (S.D. Fla. 2010) (while applying New York law, "Plaintiffs are alleging that the actions of Defendant banks, in manipulating and reordering Plaintiffs' debit transactions, are deceptive and do not comply with the terms of the contract. Plaintiffs therefore sufficiently allege a "deceptive practice.")); *Goldman v. Simon Property Group, Inc.*, 869 N.Y.S.2d 125, 129-30 (2d Dept. 2008) (allegation that fee was deceptive sufficient to state a cause of action under GBL § 349); *Negrin v. Norwest Mortg., Inc.*, 700 N.Y.S.2d 184, 192-93 (2d Dept. 1999) (allegations of a bank's unilateral imposition of fees upon its customers state a valid GBL § 349 claim). Because Plaintiff has plausibly allege HSBC's material misrepresentations, the Court should deny HSBC's motion to dismiss.

E.      **Plaintiff's Claims are not Preempted**

Finally, HSBC argues that the National Bank Act ("NBA") preempts Plaintiff's claims.

Mot. at 12-16. Although HSBC bears the burden of establishing preemption, it fails to identify

what type of preemption if believes applies and never ties specific preemption arguments to

specific claims. Instead, HSBC generally argues that Plaintiff's claims conflict with several of

the powers granted to national banks by the NBA and its implementing regulations. None of

HSBC's arguments withstand scrutiny because HSBC omits discussion of binding Supreme

Court precedent that excludes Plaintiff's claims from the scope of NBA preemption and HSBC

mischaracterizes Plaintiff's claims to incorrectly suggest they still fall within the NBA's

preemptive scope.

The NBA does not preempt state statutes of general application, including contract and

quasi-contract law, and general consumer protection statutes like the GBL § 349. "States…have

always enforced their general laws against national banks." *Cuomo v. Clearing House Ass'n,*

*L.L.C.*, 557 U.S. 519, 534 (2009). "Federally chartered banks are subject to state laws of general

application in their daily business to the extent such laws do not conflict with the letter or general

purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). For example,

"contracts made by national banks 'are governed and construed by State laws.'" *Id.* (quoting

*Nat'l Bank v. Commonwealth*, 9 Wall. 353, 362, 19 L.Ed. 701 (1870)). *See also In re HSBC*

*Bank*, 1 F. Supp. 3d at 46-48 (collecting cases and stating federal courts addressing allegations of

banks unfairly charging overdraft fees "have declined to hold that state claims, based on both

statutory and common law, are preempted by the NBA or OCC regulations."); *Miller v. Wells*

*Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 552 (S.D.N.Y. 2014) ("the Court rejects defendants'

arguments that the [NBA] preempts plaintiff's state law claims); *In re LIBOR-Based Fin.*

21

*Instruments Antitrust Litig.*, No. 11-md-2262-NRB, 2015 WL 6696407, at *15 (S.D.N.Y. Nov. 3, 2015) ("Courts have usually held that regulations addressed to specific banking activities are preempted while laws of general applicability, such as tort law and consumer protection law, are not"); *Baldanzi v. WFC Holdings Corp.*, No. 07-cv-9551-LTS, 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008) ("causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted" by the NBA); *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 377-78 (D. Conn. 2018) (holding that NBA does not preempt unfair trade practices claims in case challenging bank's unfair assessment of overdraft fees).

Here, HSBC has the burden of establishing that Plaintiff's claims are preempted. *See, e.g., Stewart v. Riviana Foods Inc.*, No. 16-cv-6157-NSR, 2017 WL 4045952, at *4 (S.D.N.Y. Sept. 11, 2017) (citing *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011)). It falls well short of meeting its burden.

First, HSBC argues that Plaintiff's claims would interfere with its deposit-taking powers under 12 C.F.R. § 7.4007. *See* Mot. at 13. HSBC fails to explain precisely how Plaintiff's claims—which involve the alleged misrepresentation of the fees it charges—could possibly interfere with these powers, which is reason enough for the Court to deny this portion of HSBC's motion. Regardless, the regulation HSBC cites clearly states that the types of state laws on which Plaintiff's claims are based are not preempted:

> State laws that are not preempted. State laws on the following subjects are not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in *Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al.* 517 U.S. 25 (1996):
>
> (1) Contracts;

(2) Torts;

12 C.F.R. § 7.4007. The *Barnett* case cited provides that a state regulation will only be preempted if it will "significantly interfere with the national bank's exercise of its powers." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005) (quoting *Barnett*, 517 U.S. at 33. In fact, the OCC has even warned national banks that they may be held liable for violations of state consumer protection statutes such as GBL § 349, stating "[a] number of state laws prohibit unfair or deceptive acts or practices, and such laws may be applicable to insured depository institutions." OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, 2002 WL 521380, at *2, *7 n. 2 (Mar. 22, 2002). Here, HSBC fails to explain how Plaintiff's claims would interfere with these powers. Accordingly, HSBC has failed to meet its burden.

Second, HSBC argues that Plaintiff's claims would interfere with its power to impose non-interest charges under 12 C.F.R. § 7.4002. Section 7.4002 permits a national bank to "charge its customers non-interest charges and fees, including deposit account service charges." *Id.* It does not expressly preempt State laws. *See* 12 C.F.R. § 7.4002(d) ("The OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees described in this section."). Nor do Plaintiff's claims conflict with section 7.4002. She does not challenge whether HSBC may charge fees or the amounts of those fees. Instead, Plaintiff's claims are based on HSBC's violating its own Account Documents by charging repetitive fees in violation of its contracts and by misrepresenting its business practices. Plaintiffs' position is perfectly consistent with § 7.4002, so it cannot preempt Plaintiff's claims.

Finally, HSBC claims that courts routinely dismiss claims that seek to regulate a national banks' disclosures to consumers. *See* Mot. at 14-15. HSBC cites a series of cases finding the NBA preempted state laws that sought to prohibit banks from making specific statements or mandate other statements. *Id.* This entire argument, however, is a red herring. Plaintiff does not seek to regulate HSBC's disclosures. But she is entitled to damages when HSBC breaches its contracts, makes material misrepresentations to consumers, or unjustly enriches itself at Plaintiff's expense. All of these claims stem from generally applicable laws that do not interfere with HSBC's powers under the NBA.

As an illustration, Plaintiff agrees with HSBC that the Ninth Circuit's opinion in *Gutierrez v. Wells Fargo Bank, N.A.* is "particularly instructive" on this point, though HSBC omits the most important part of the opinion. Mot. at 15 (citing *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712 (9th Cir. 2012)). HSBC is correct that the *Gutierrez* plaintiffs challenged Wells Fargo's practice of posting larger transactions before smaller ones to maximize overdraft fees under state unfair competition statutes. *Id.* HSBC also is correct that the Ninth Circuit held that Gutierrez's unfair competition claims were preempted to the extent they were based on *omissions*. *Gutierrez*, 704 F.3d at 726. But the next few paragraphs make clear that Gutierrez's claims based on Wells Fargo's *misrepresentations* were not preempted. *Id.* ("Accordingly, we hold that Gutierrez's claim for violation of the fraudulent prong of the Unfair Competition Law by making misleading misrepresentations with regard to its posting method is not preempted, and we affirm the district court's finding to this extent."). Because Plaintiff's GBL claims are based on misrepresentations and HSBC's breach of contract and do not otherwise interfere with HSBC powers under the NBA, they are not preempted.

## V.    CONCLUSION

Based on the foregoing arguments, HSBC's Motion should be denied.


Dated:  April 3, 2020                          Respectfully submitted,


                                               */s/ David M. Berger*
                                               David M. Berger
                                               Eric H. Gibbs
                                               GIBBS LAW GROUP, LLP
                                               501 14th Street, Suite 1110
                                               Oakland, CA 94612
                                               (510) 350-9700
                                               ehg@classlawgroup.com
                                               dmb@classlawgroup.com

                                               John A. Kehoe (JK-4589)
                                               KEHOE LAW FIRM, P.C.
                                               41 Madison Avenue, 31st Floor
                                               New York, NY 10010
                                               (212) 804-7700
                                               jkehoe@kehoelawfirm.com

                                               Jeffrey Kaliel
                                               Kaliel PLLC
                                               1875 Connecticut Avenue NW, 10th Floor
                                               Washington, DC  20009
                                               202-350-4783
                                               jkaliel@kalielpllc.com

                                               Counsel for Plaintiffs and the Proposed Classes