UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICE CHAMBERS, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>HSBC BANK USA, N.A.,<br><br>　　　　　　　　Defendant. | Civil Action No. 1:19-cv-10436-ER<br><br>Hon. Edgardo Ramos<br><br><u>Oral Argument Requested</u> |

**REPLY IN SUPPORT OF
HSBC BANK USA, N.A.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

                                                                                               **Page**

I.     INTRODUCTION ................................................................................................................ 1

II.    ARGUMENT ....................................................................................................................... 2

        A.    Plaintiff's Complaint Fails To Adequately Allege Any Plausible Breach Of The Rules And Disclosures Necessary To Plead A Claim For Breach Of Contract .................................................................................................................. 2

                1.    Plaintiff's Claim Should Be Dismissed Because The Rules And Disclosures Expressly Authorize The NSF Fees At Issue .......................... 2

                2.    Plaintiff's Reliance On The Authorities Cited In The Opposition Is Misplaced ................................................................................................... 4

                3.    The Terms And Conditions Adopted By Other Financial Institutions Are Not Relevant And Cannot Be Used To Change The Agreed-Upon Rules And Disclosures ................................................. 8

                4.    Plaintiff's Reliance On The NACHA Rules Is Procedurally Improper And Unpersuasive ........................................................................ 9

        B.    Plaintiff's Implied Covenant Claim Should Be Dismissed As Duplicative Of Her Claim For Breach Of Contract ............................................................... 11

        C.    Plaintiff's Unjust Enrichment Claim Similarly Is Precluded By The Uncontested Rules And Disclosures Governing The NSF Fees At Issue ............. 12

        D.    Contractually Authorized Conduct Cannot Constitute Deceptive or Unfair Conduct Sufficient to Sustain a GBL Claim ...................................................... 13

        E.    Federal Preemption Bars Plaintiff's State Law Claims ...................................... 14

III.   CONCLUSION ................................................................................................................. 15

LA 52314921

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC,
  637 F. Supp. 2d 185 (S.D.N.Y. 2009) ...................................................................................12

Ashcroft v. Iqbal,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......................................................13

Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.,
  No. 14-CV-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) ...............................12

Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .........................................................7

Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.,
  No. 11 CIV. 4509 RJS, 2013 WL 1385210 (S.D.N.Y. Mar. 18, 2013) .................................13

Chiste v. Hotels.com L.P.,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010) ...................................................................................13

Coleman v. Alaska USA Fed. Credit Union,
  No. 3:19-cv-0229-HRH (D. Alaska, April 14, 2020) ..............................................................8

Costoso v. Bank of Am. N.A.,
  74 F. Supp. 3d 558 (E.D.N.Y. 2015) ............................................................................... 11, 14

Coty, Inc. v. L'Oreal S.A.,
  320 F. App'x 5 (2d Cir. 2009) ...............................................................................................12

Cruz v. FXDirectDealer, LLC,
  720 F.3d 115 (2d Cir. 2013) ..................................................................................................11

Gao v. JPMorgan Chase & Co.,
  No. 14-cv-04281, 2015 WL 3606308 (S.D.N.Y. June 9, 2015) ..............................................9

Garcia v. UMB Bank NA,
  No. 1916-CV01874 (Jackson Co. Mo. Circuit Court Oct. 18, 2019) ......................................7

Gutierrez v. Wells Fargo Bank, NA,
  704 F.3d 712 (9th Cir. 2012) .................................................................................................14

Hunt Ltd. v. Lifschultz Fast Freight, Inc.,
  889 F.2d 1274 (2d Cir. 1989) ..................................................................................................9

LA 52314921

Hurley v. Town of Southampton,
  No. CV175543JSAKT, 2018 WL 3941944 (E.D.N.Y. Aug. 13, 2018) ................................10

Karmilowicz v. Hartford Fin. Servs. Grp., Inc.,
  494 F. App'x 153 (2d Cir. 2012) ..................................................................................12

Lambert v. Navy Fed. Credit Union,
  No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019)
  appeal docketed No. 19-1993 (4th Cir, Sep. 12, 2019) ..........................................................4

Morris v. Bank of Am., N.A.,
  No. 318CV00157RJCDSC, 2019 WL 1421166 (W.D.N.C. Mar. 29, 2019) ..........................7

Morris v. Bank of America, N.A.,
  No. 3:18-CV-157-RJC-DSC, 2019 WL 1274928 (W.D.N.C. Jan. 8, 2019) ..........................7

In re Navidea Biopharmaceuticals Litig.,
  No. 19-CV-1578, 2019 WL 7187111 (S.D.N.Y. Dec. 26, 2019) ........................................12

Perks v. TD Bank, N.A.,
  No. 18-CV-11176 (VEC), 2020 WL 1272246 (S.D.N.Y. Mar. 17, 2020) .....................*passim*

Perri v. Notre Dame Federal Credit Union,
  No. 71C01–1909–PL–000332 (Ind. Cir. Ct. St. Joseph Cty. March 2, 2020) ........................6

Robinson v. Bank of Am., N.A.,
  No. CV 11-03939, 2011 WL 5870541 (C.D. Cal. Oct. 19, 2011) ........................................14

Tisdale v. Wilson Bank and Trust,
  No. 19-400-BC (Davidson Co. Tenn. Chancery Court Oct. 17, 2019) ...................................6

Uddoh v. United Healthcare,
  254 F. Supp. 3d 424 (E.D.N.Y. 2017) ................................................................................10

**Rules**

Fed. R. Civ. P. 8 ..............................................................................................................12

Fed. R. Civ. P. 12(b)(6) ......................................................................................................7

**Other Authorities**

NACHA Operating Rules & Guidelines § 2.14.4 ...................................................................10

I.    INTRODUCTION

The Rules and Disclosures governing Plaintiff's account informed her that HSBC would impose NSF fees "[f]or each withdrawal, check, electronic funds transfer or other item that overdraws [Plaintiff's] account . . . ." Accordingly, when Santander and Geico presented a second set of payment requests authorized by Plaintiff, "each" of those requests was a separate ACH transaction eligible for a separate NSF fee.

Plaintiff's claim for breach of contract fails because the Rules and Disclosures expressly authorized the NSF fees at issue. Plaintiff's contention that she subjectively desired to "pay . . . only one time" does not retroactively change whatever authority she provided to Santander and Geico, nor can Plaintiff now challenge HSBC's contractually authorized NSF fees based on inapposite cases, other financial institutions' disclosures, or the National Automated Clearinghouse Association ("NACHA") Rules cited in the Opposition.

Plaintiff's claim for breach of the implied covenant similarly fails because it is duplicative of her claim for breach of contract. Plaintiff attempts to distinguish these claims by contending that the former is based on some problematic exercise of discretion by HSBC while the latter purportedly is not. However, the allegations in the Complaint demonstrate the two claims are based on precisely the same conduct.

Plaintiff's claims for unjust enrichment and violation of GBL § 349 fare no better. A claim for unjust enrichment necessarily fails where, as here, there is no dispute that a valid and binding contract governs the conduct at issue. With respect to Plaintiff's GBL § 349 claim, it should be dismissed because Plaintiff fails to identify materially misleading terms in the Rules and Disclosures. To the extent Plaintiff has adequately met that pleading requirement, Plaintiff's claim should still be dismissed as duplicative of her claim for breach of contract.

Finally, because Plaintiff's collective claims seek to challenge the nature and form of HSBC's Rules and Disclosures, they are preempted by the NBA and OCC. For all of these reasons, as further detailed below and in the Motion, the Court should dismiss the Complaint with prejudice.

## II. ARGUMENT

### A. Plaintiff's Complaint Fails To Adequately Allege Any Plausible Breach Of The Rules And Disclosures Necessary To Plead A Claim For Breach Of Contract.

#### 1. Plaintiff's Claim Should Be Dismissed Because The Rules And Disclosures Expressly Authorize The NSF Fees At Issue.

Pursuant to the plain terms of the Rules and Disclosures, Plaintiff agreed to be charged a $35 NSF fee "[f]or each withdrawal, check, electronic funds transfer or other item that overdraws [Plaintiff's] account[,]" and an "item" may include "electronic items or transactions, including . . . pre-authorized payments or transfers, ACH transactions, and any other instruments or instructions for the payment, transfer or withdrawal of funds . . . ." (Compl. Ex. A at 2; id. Ex. B at 4.) Accordingly, when Plaintiff's account did not have sufficient funds at each point in time ACH transfers were presented against it by non-party merchants, HSBC had the contractual right to return them and charge a fee "each" time an item was presented, even if that request was by the same merchant, in the same amount, and for the same purpose. Plaintiff now attempts to rewrite the Rules and Disclosures as well as the expressly defined term "item" to suit her claims and to create ambiguity where there is none.

The gravamen of Plaintiff's Opposition is that the Santander and Geico transactions at issue were the "same items" as previously presented transactions because Plaintiff "wanted to pay Santander or Geico only one time and she made only one instruction to pay each entity." (Opp'n 5.) However, Plaintiff's subjective desire to "pay Santander or Geico only one time"

does not change the fact that a second attempt at payment was presented by these merchants on her Account and that the Rules and Disclosures permitted HSBC to assess an NSF fee "each" time those items were presented and returned, which is precisely what happened here. Plaintiff rhetorically asks why the second set of Santander and Geico transactions at issue are "separate items" eligible for NSF fees: "Why is the resubmission of the same ACH transaction a 'separate item?'" (Opp'n 11.) The answer is simply that these were not the same transactions. Instead, Santander and Geico initiated new ACH transactions.

Plaintiff's contention that "she made only one instruction to pay each entity" similarly fails to alter the plain meaning of the Rules and Disclosures. Plaintiff baselessly presumes a single instruction from her to a merchant can only authorize and result in a single transaction between a merchant and HSBC, but this is simply false and confuses two different things – Plaintiffs' interactions with her merchants, and those merchants' interactions with HSBC. As is evidenced by what transpired here, and as a matter of common sense, Plaintiff's authorization to the merchants permitted them to initiate a second transaction if the first was returned unpaid. Merchants are entitled to be paid, and, as reflected in the payments due to Geico, Plaintiff undoubtedly did not want her insurance to lapse due to non-payment. Although Plaintiff argues that she "made only one instruction to pay," she takes care to avoid actually alleging that her payment authorization to Santander and Geico did not authorize them to make a second attempt at payment if the first was returned unpaid. In any event, it makes no difference whether Geico and Santander were specifically instructed (rather than authorized) by Plaintiff to make second attempts at payment; the fact is that they did so.

### 2. Plaintiff's Reliance On The Authorities Cited In The Opposition Is Misplaced.

The Court should adopt the rationale in Lambert v. Navy Fed. Credit Union, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) appeal docketed No. 19-1993 (4th Cir, Sep. 12, 2019), which dismissed substantively identical claims based on similar language in the operative account agreement. Plaintiff asks this Court to instead follow other decisions, including the recent decision in Perks v. TD Bank, N.A., No. 18-CV-11176 (VEC), 2020 WL 1272246 (S.D.N.Y. Mar. 17, 2020). However, Plaintiff's reliance on that decision, and indeed all of the authorities cited in the Opposition, is misplaced.

Lambert analogized the ACH transactions at issue to checks, concluding that "[w]hen Plaintiff's insurer 're-presented' the request for payment, it was a new ACH debit item—just as a second check would be a new check even if it was by the same merchant, in the same amount, for the same purpose—and was therefore eligible for a fee when it was returned for nonsufficient funds." Lambert, 2019 WL 3843064 at *4. Plaintiff challenges this comparison by arguing that because she did not take any additional action between authorizing the initial payments and the second presentment of those payments, it's as though "a merchant repeatedly attempted to submit the same check . . . ." (Opp'n 11.) Plaintiff's argument misses the point. Here, Plaintiff authorized Santander and Geico to present an ACH transaction against her HSBC account for amounts she owed to them. This is analogous to Plaintiff providing Santander and Geico with checks to present against her HSBC account for those amounts. However, Plaintiff's initial authority to Santander and Geico also allowed them to make a second attempt at payment if the first ACH request was returned unpaid. In the analogous situation, this is the equivalent of providing Santander and Geico each with two checks and affirming that if the first check is returned unpaid, they can make a separate attempt at payment with the second check. Just as

these second attempts at payment could only be made with separate checks, the second set of ACH transactions were separate ACH transactions, eligible for NSF fees pursuant to the Rules and Disclosures. (Compl. Ex. A at 2.)

The decision in Perks is distinguishable and unpersuasive. In Perks, two named plaintiffs alleged that they initiated three PayPal ACH transactions, which were rejected for insufficient funds and triggered NSF fees on their accounts. Perks, 2020 WL 1272246, at *2. Plaintiffs alleged that a second set of transactions were presented by PayPal a week later without any further action by plaintiffs, triggering a second set of NSF fees. Id. Like Plaintiff here, plaintiffs contended that the second set of transactions were not separate "items" eligible for NSF fees. Id. Importantly, the similarities end there.

In Perks, the agreements at issue defined "an item" as (among other things) an "ACH transaction" in the singular. Id. Thus, when the merchant in Perks presented the initial ACH transactions and then presented the second set of ACH transactions, defendant could not argue that each ACH transaction was an "item" because, in the definition of "item," an ACH transaction was listed in the singular. This led defendant to argue that the subsequent ACH transactions were covered under a catch-all provision encompassing "any other instruction or order for the payment, transfer, deposit or withdrawal of funds." Id. at *3. It was defendant's reliance on the catch-all language that created an ambiguity, which the court concluded could not be resolved on a motion to dismiss, reasoning: "Although it is plausible to read '[an] ACH transaction' as referring to the original submission and 'any other instruction or order' as referring to any resubmission of an ACH transaction, it is just as plausible to read 'other' orders as meaning orders that are not one of the previously enumerated types of transaction and thus

that '[an] ACH transaction' necessarily refers to both the original submission and any subsequent resubmission of the transaction." Id. (edits in original).

Critically, HSBC does not rely on such a catch-all provision because the definition of "an item" in the Rules and Disclosures is importantly different. HSBC authorizes a $35 charge "[f]or <u>each</u> withdrawal, check, electronic funds transfer or other item that overdraws your account." (Compl. Ex. A at 2 (emphasis added).) Further, an "item" is defined to include "ACH transactions." (Id. Ex. B at 3-4.) Thus, unlike defendant in <u>Perk</u>, HSBC does not rely on the catch-all provision because "item" includes "ACH transaction<u>s</u>" in the plural. The court in <u>Perks</u> did not address such a provision/term and the definition of "item" in this case is clear.

Plaintiff's reliance on the non-binding decisions attached to counsel's supporting declaration is similarly misplaced. (<u>See</u> ECF No. 26-1.) For example, in <u>Tisdale v. Wilson Bank and Trust</u>, No. 19-400-BC (Davidson Co. Tenn. Chancery Court Oct. 17, 2019), plaintiff's claim for breach of contract survived because the underlying agreement failed to disclose even basic information about NSF fees. The court's decision noted that the agreement at issue failed to even indicate customers could be charged a fee for returned NSF transactions in the first place, nor did the accompanying "fee schedule" disclose such charges or even define the acronym "NSF." (ECF No. 26-6 at 70-71 of 88; <u>id.</u> at 72 of 88.) None of these issues are present here. The decision in <u>Perri v. Notre Dame Federal Credit Union</u>, No. 71C01–1909–PL–000332 (Ind. Cir. Ct. St. Joseph Cty. March 2, 2020), is similarly distinguishable because the defendant failed to demonstrate any disclosure that permitted the assessment of NSF fees "[f]or each withdrawal, check, electronic funds transfer or other item that overdraws your account" like the disclosures at issue here. (Compl. Ex. A at 2; ECF No. 26-9 at 6-7 of 8.)

Indeed, some of the cases cited by Plaintiff fail to offer any plausible support whatsoever. In Morris v. Bank of America, N.A., No. 3:18-CV-157-RJC-DSC, 2019 WL 1274928 (W.D.N.C. Jan. 8, 2019), plaintiff's claim for breach of contract was based on four different theories, including assessing NSF/OD fees on resubmitted transactions, assessing NSF/OD fees across multiple accounts held by defendant, assessing NSF/OD fees prematurely, and assessing monthly servicing fees that should have been waived. Id. at *1. The decision in Morris declined to dismiss plaintiff's claim for breach of contract while offering no analysis or explanation of which of the preceding bases for plaintiff's claim it found persuasive, thereby offering no support here.[1] Id. at *2. Plaintiff's reliance on Garcia v. UMB Bank NA, No. 1916-CV01874 (Jackson Co. Mo. Circuit Court Oct. 18, 2019), is similarly puzzling. In Garcia, the court merely issued a one-page summary order offering no pertinent (much less persuasive) analysis. (ECF No. 26-3 at 2 of 3.) Nor does the transcript of oral argument on that motion (also submitted by Plaintiff) reflect the court's rationale, which merely concludes with the court stating it would "take the matter under advisement." (ECF No. 26-4 at 57 of 58.) To the extent there is anything to glean from that transcript, it is the acknowledgement of plaintiff's counsel (who also represents Plaintiff here) that there was an "extraordinarily high" standard for moving to dismiss under Missouri civil procedure and that, unlike the instant Rule 12(b)(6) motion, Missouri requires defendants to "show that there is no possible route for a fact finder to determine that [plaintiff's] allegations could equate to stating a claim for breach of contract." (ECF No. 26-4 at 22 of 58.) No such "extraordinary" burden is present in this case, rendering the summary order inapposite. See Bell

---

[1] Moreover, the defendant in Morris did not object to the magistrate judge's recommendation to deny the defendant's motion to dismiss plaintiffs' contract claims, and the court adopted the magistrate's recommendation without analysis. See Morris v. Bank of Am., N.A., No. 318CV00157RJCDSC, 2019 WL 1421166, at *4 (W.D.N.C. Mar. 29, 2019).

LA 52314921

Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (holding that a plaintiff's allegations must cross a "threshold of plausibility" and not mere "possibility").

Finally, Plaintiff's Notice of Supplemental Authority asks the Court to consider the recent decision in Coleman v. Alaska USA Fed. Credit Union, No. 3:19-cv-0229-HRH (D. Alaska, April 14, 2020), which dealt with a critically distinguishable account agreement. (ECF No. 27.) While the agreement at issue in Coleman informed plaintiff that an NSF "fee will be assessed for each returned item," it never defined the term "item." (ECF No. 27-1 at 5 of 18.) Accordingly, the court was forced to interpret the agreement by considering the common usage of the term "item," the statutory definition of "item" under an inapposite state statute, and based on how "item" is used elsewhere in the agreement. (Id. at 8-9 of 18.) As a result of these linguistic gymnastics, the court concluded that both parties asserted plausible interpretations of the agreement and declined to dismiss plaintiff's claim for breach of contract at the pleading stage. No such efforts are necessary (or appropriate) in this case given the clear and express definition of "item" in the Rules, which includes "ACH transactions" and precludes the ambiguity present in Coleman. (Compl. Ex. B at 3-4.)[2]

### 3. The Terms And Conditions Adopted By Other Financial Institutions Are Not Relevant And Cannot Be Used To Change The Agreed-Upon Rules And Disclosures.

Faced with the plain language of the Rules and Disclosures, Plaintiff resorts to arguing that provisions therein could have been drafted differently to more clearly disclose that subsequent ACH transactions may be subject to NSF Fees. (Opp'n 7-8.) But whether the Rules

---

[2] The claims in Coleman also were based on the contention that the agreements disclosed a fee assessed on "each returned item" when they purportedly should have disclosed "a fee each time an item is returned." (ECF No. 27-1 at 8 of 18.) Again, no such issue is present here because the Disclosures do not refer to "each returned item" and instead make clear that an NSF fee will be assessed "[f]or each withdrawal, check, electronic funds transfer or other item that overdraws your account" and then separately state that "[a] fee is charged whether we pay or return the item." (Compl. Ex. A at 2.)

and Disclosures could have been drafted differently is not the issue. Plaintiff must identify a provision in the current Rules and Disclosures that was breached, and simply providing an alternative interpretation does not make a contractual provision ambiguous. See Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) (holding that "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation"); Gao v. JPMorgan Chase & Co., No. 14-cv-04281, 2015 WL 3606308, at *2 (S.D.N.Y. June 9, 2015) (granting motion to dismiss claims based on breach of credit card agreement, holding the court "cannot rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal") (internal quotation marks omitted). Nor can Plaintiff manufacture any ambiguity through her repeated and unsubstantiated reference to some "common usage" of the term "item." Any such usage is irrelevant because "item" is an expressly defined term in the Rules and Disclosures.

### 4. Plaintiff's Reliance On The NACHA Rules Is Procedurally Improper And Unpersuasive.

Plaintiff's attempt to now introduce the NACHA rules in support of her claim should be rejected. As a preliminary matter, Plaintiff's contention that "HSBC's Deposit Agreement expressly incorporates the NACHA Rules into its contract" is simply wrong. (Opp'n 8-9.) Neither the excerpt cited by Plaintiff nor the Rules and Disclosures themselves refer to either "NACHA" or the "National Automated Clearinghouse Association." Even if the NACHA rules were expressly incorporated into the Rules and Disclosures, Plaintiff does not cite to, or rely on, the NACHA rules in her Complaint. Although Plaintiff now asks the Court to "[r]ead [the Rules and Disclosures] in conjunction with NACHA Rules" to support her claims (Opp'n 10), this is an entirely new theory. As a result, Plaintiff's argument (as well as the NACHA rules themselves) should be disregarded pursuant to the well-settled principle that "plaintiffs cannot amend their

complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss." Hurley v. Town of Southampton, No. CV175543JSAKT, 2018 WL 3941944, at *18 (E.D.N.Y. Aug. 13, 2018); see Uddoh v. United Healthcare, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff [] is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss . . . .").

Even if the Court were to consider the NACHA rule cited in Plaintiff's Opposition, and it should not, the rule does nothing to salvage Plaintiff's claim. Plaintiff argues that "NACHA's rules [] permit <u>the merchant</u> to charge only one such fee for a single 'returned entry,' even if the merchant re-presents that entry multiple times" and that this rule somehow "makes clear that a 're-presented' entry is . . . not a separate entry (or 'item') that could trigger an additional fee." (Opp'n 9-10 (citing NACHA Operating Rules & Guideline § 2.14.4) (emphasis added).) In doing so, Plaintiff misstates the cited rule. The cited rule does not prohibit the merchant from assessing more than one return fee "for" a returned entry; it limits the merchant to one return fee "<u>in relation to</u> an <u>underlying</u> Entry or item that was returned." NACHA Operating Rules § 2.14.4. If a re-initiated entry were the same "item," as Plaintiff contends, there would be no need for the rule to use the more expansive "in relation to" language or refer to the "underlying" entry or item, both of which indicate that a merchant's re-initiation of a payment request results in an additional (and different) item under the NACHA rules. Moreover, Plaintiff ignores the critical fact that the rule addresses the treatment of fees <u>by merchants</u>, not depository institutions. Indeed, Plaintiff cites nothing in the NACHA rules that prohibits a depository institution from assessing NSF fees, nor would such a rule have any bearing on the contractual language at issue here.

LA 52314921

### B. Plaintiff's Implied Covenant Claim Should Be Dismissed As Duplicative Of Her Claim For Breach Of Contract.

Where a claim for breach of the implied covenant rests on the same underlying conduct as a claim for breach of contract, the implied covenant claim must be dismissed. See Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) (affirming dismissal of implied covenant claim, holding that "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant"). Plaintiff's claims for breach of contract and breach of the implied covenant plainly are duplicative and arise from the same allegations that HSBC improperly imposed NSF fees on ACH transactions. (Compare, e.g., Compl. ¶ 31 ("HSBC breached the contract when it charged more than one [NSF] fee per item") with ¶ 43 ("[B]y charging more than one NSF Fee on a single item, HSBC . . . violates the implied covenant to act in good faith").) Accordingly, Plaintiff's implied covenant claim necessarily fails.

Plaintiff attempts to distinguish her implied covenant claim by arguing that HSBC "use[d] its discretion to define ['item'] in an unfair and illogical manner." (Opp'n 13.) This is simply a repackaging of Plaintiff's breach-of-contract theory and was precisely the argument rejected by the court in Perks, which granted defendant's motion to dismiss a breach of the implied covenant claim. Perks, 2020 WL 1272246, at *3–4.

As discussed in the Motion, Plaintiff's implied covenant claim fails for the separate and additional reason that a plaintiff cannot use such a claim to impose obligations "that would be inconsistent with other terms of the contractual relationship." Costoso v. Bank of Am. N.A., 74 F. Supp. 3d 558, 572 (E.D.N.Y. 2015) (internal quotation marks omitted). Because the Rules and Disclosures expressly authorized HSBC to impose NSF fees on "each" presented item, those agreements preclude any claim for breach of the implied covenant. (See Compl. Ex. A at 2.)

### C. Plaintiff's Unjust Enrichment Claim Similarly Is Precluded By The Uncontested Rules And Disclosures Governing The NSF Fees At Issue.

Under New York law, a plaintiff may not plead a claim for unjust enrichment when an undisputed contract governs the conduct at issue. Coty, Inc. v. L'Oreal S.A., 320 F. App'x 5, 6 (2d Cir. 2009) ("[I]t is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract.").[3] Plaintiff argues that the Court should not dismiss her claim for unjust enrichment because she has pleaded it in the alternative to her claim for breach of contract. (Opp'n 15-18.) However, Plaintiff's "alternative theory" argument has been squarely rejected by New York courts where, as here, there is no dispute that there is a valid and enforceable contract between the parties. See Perks, 2020 WL 1272246, at *4 (dismissing unjust enrichment claim and holding "[i]t is well settled that a claim for unjust enrichment will not lie if the parties have a contract"); Bancorp Servs., LLC v. Am. Gen. Life Ins. Co., No. 14-CV-9687 (VEC), 2016 WL 4916969, at *8 (S.D.N.Y. Feb. 11, 2016) (dismissing unjust enrichment claim as duplicative (citing Karmilowicz v. Hartford Fin. Servs. Grp., Inc., 494 F. App'x 153, 157 (2d Cir. 2012))).[4] Plaintiff's reliance on Rule 8 of the Federal Rule of Civil Procedure and decisions from outside the State of New York fails to provide any basis to depart from the well-settled and binding precedent cited here and in the Motion.

---

[3] Plaintiff's Opposition unpersuasively attempts to distinguish Coty by pointing out that the underlying claim for breach of contract had already been arbitrated to a final judgment when the Second Circuit affirmed dismissal of plaintiff's claim for unjust enrichment. (Opp'n 17-18.) However, this does nothing to change the point of law cited by HSBC that "recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract." Coty, 320 F. App'x at 6.

[4] Although an exception to that rule exists when there is a question whether the contract is valid, that exception does not apply here because Plaintiff does not dispute the validity of the Rules and Disclosures. See In re Navidea Biopharmaceuticals Litig., No. 19-CV-1578, 2019 WL 7187111, at *9 (S.D.N.Y. Dec. 26, 2019) ("Where a plaintiff fails to allege that the contract at issue is invalid or unenforceable . . . a claim for [unjust enrichment] is precluded." (citing Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009))).

### D. Contractually Authorized Conduct Cannot Constitute Deceptive or Unfair Conduct Sufficient to Sustain a GBL Claim.

Because the Rules and Disclosures expressly authorize HSBC to assess an NSF fee on each item, including multiple items presented to HSBC by non-party merchants for the same transaction, assessing such fees cannot, as a matter of law, be deceptive or unfair under the GBL. See, e.g., Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc., No. 11 CIV. 4509 RJS, 2013 WL 1385210, at *7 (S.D.N.Y. Mar. 18, 2013) (dismissing GBL claim, holding that "when the alleged deceptive act or practice is fully disclosed to a plaintiff, the 'deception' cannot amount to a materially misleading act or practice under Section 349"). Plaintiff contends that the Rules and Disclosures "contradict HSBC's position" but critically fails to identify any specific provision whatsoever that actually "contradicts" HSBC's argument. (See Opp'n 18-19.) Plaintiff also cites cases where, unlike here, the practices at issue were deemed affirmatively misleading and undisclosed to the plaintiff consumer. See, e.g., Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010) (addressing Hotels.com's failure to disclose service fees to consumers and charging consumers one tax rate while paying hotels a lower tax rate, then keeping the difference without disclosing it to the consumer). Those cases are simply not pertinent.[5]

Finally, Plaintiff's Opposition contends that her "GBL claim hinges on whether the Account Documents are materially misleading . . . ." (Opp'n 19.) As a result, Plaintiff's GBL § 349 claim is duplicative of her claim for breach of contract. (See, e.g., Compl. ¶ 58 "Defendant mischaracterized in the Account Documents its true NSF Fee practices and breached the express

---

[5] Plaintiff also cites cases purportedly in support of the proposition that whether the Rules and Disclosures are materially misleading "is a fact question determined and summary judgment or trial" but this ignores Plaintiff's burden of first alleging a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Because the Rules and Disclosures authorize HSBC to assess an NSF fee on each item presented, the Rules and Disclosures are not materially misleading as a matter of law.

terms of the Account Documents.") Plaintiff's failure to allege a materially misleading practice separate and apart from those on which her breach of contract claim is based is sufficient grounds for dismissal. See Perks, 2020 WL 1272246, at *4 (dismissing GBL § 349 claim "because it is duplicative of [plainitff's] breach-of-contract claim"); Costoso v. Bank of Am., N.A., 74 F. Supp. 3d at 575 (dismissing § 349 claim because "the conduct of which [the plaintiff] complains is essentially that the [d]efendant failed to satisfy its contractual duties, not that it concealed or misrepresented any contractual terms." (citation omitted)).

### E. Federal Preemption Bars Plaintiff's State Law Claims.

Throughout her Complaint, Plaintiff faults HSBC for allegedly failing to disclose that it would charge an NSF fee each time a debit item is presented and returned for insufficient funds At the core of her claims, Plaintiff attempts to use state law to dictate the way in which HSBC engages in the business of banking. Plaintiff's claims therefore are subject to preemption.

"The requirement to make particular disclosures falls squarely within the purview of federal banking regulation and is expressly preempted . . . ." Gutierrez v. Wells Fargo Bank, NA, 704 F.3d 712, 726 (9th Cir. 2012). Indeed, "[w]hat matters . . . is not whether . . . [the] general state laws were designed to regulate" the conduct complained of, "but whether their application to a specific federal banking activity conflicts with an NBA regulation or prevents or interferes with an enumerated or incidental power granted by the NBA." Robinson v. Bank of Am., N.A., No. CV 11-03939, 2011 WL 5870541, at *4 (C.D. Cal. Oct. 19, 2011) (emphasis added). In both her Complaint and Opposition, Plaintiff argues that to avoid state-law liability, HSBC's Rules and Disclosures should mirror those of other financial institutions, whose disclosures she prefers. (See Compl. ¶¶ 36-39; Opp'n 7-8.) Thus, while Plaintiff's Opposition contends her claims are based on HSBC's alleged violation of the Rules and Disclosures, her allegations demonstrate that her real issue is with what she believes the Rules and Disclosures

should but do not say. (See Compl. ¶ 40 (after listing other banks disclosures, alleging "HSBC provides no such disclosure, and in so doing, breaches its contracts with accountholders, engages in bad faith conduct, and deceives its accountholders").) It is precisely such a line of argument that leads to preemption because any decision regarding what any particular set of rules and disclosures should provide are matters subject to federal regulation.

### III. CONCLUSION

For the foregoing reasons, HSBC respectfully requests that the Court grant the Motion and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated: New York, New York
April 24, 2020

STROOCK & STROOCK & LAVAN LLP

By: /s/  *James L. Bernard*

James L. Bernard
Raymond A. Garcia
180 Maiden Lane
New York, New York 10038
Telephone: 212-806-5400
Email: jbernard@stroock.com
Email: rgarcia@stroock.com

*Attorneys for Defendant
HSBC Bank USA, N.A.*

LA 52314921