# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA VARGA, individually, and on behalf of all others similarly situated,<br>   Plaintiff,<br><br>    v.<br><br>AMERICAN AIRLINES FEDERAL CREDIT UNION, et al.,<br>   Defendants. | CV 20-4380 DSF (KSx)<br><br>Order GRANTING in Part and DENYING in Part American Airlines Federal Credit Union's Motion to Dismiss (Dkt. 23) |

  Defendant American Airlines Federal Credit Union (AAFCU) moves to dismiss Plaintiff Sylvia Varga's First Amended Complaint (FAC) in its entirety. Dkt. 23 (Mot.). Varga opposes. Dkt. 24 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

  AAFCU is a federally chartered credit union. Dkt. 17 (FAC) ¶ 6. Varga, who has a checking account with AAFCU, challenges two of AAFCU's fee practices on behalf of four proposed classes. Id. ¶¶ 4, 105.

### A. APPSN Fees

  The first fee is an overdraft fee assessed on "Authorize Positive, Purportedly Settle Negative Transactions," or "APPSN transactions." Id. ¶ 14. When a consumer uses a debit card to make a purchase with

"positive funds to cover the transaction, AAFCU immediately reduces the consumer's checking account for the amount of the purchase, sets aside funds in the checking account to cover that transaction, and adjusts the consumer's displayed 'available balance' to reflect that subtracted amount. As a result, customers' accounts will always have sufficient funds available to cover these transactions because AAFCU has already sequestered these funds for payment." Id. ¶ 15. The initial reduction or sequestration of funds is called a "preauthorization hold." Id. ¶ 34.

While a consumer's "available balance" is reduced by the amount of the preauthorization hold, the "actual balance" still reflects the pretransaction amount until the transaction is "posted." See id. ¶ 33. The transaction "posts" when the merchant submits its request for payment, which could happen days later and be for an amount different from the preauthorization hold. Id. Between the preauthorization hold and when the transaction posts, a consumer may spend money and reduce the available balance of the account so there are insufficient funds for the transaction. In that case, even if there may have been sufficient funds initially, AAFCU assesses an overdraft fee of $33 (the APPSN Fee). Id. ¶¶ 16-17.

AAFCU uses a consumer's available balance to determine when an account is overdrawn. Id. ¶ 33. While the funds are "immediately deducted from a positive account balance" at the time of the preauthorization hold, id. ¶ 38, "AAFCU's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account – both at the time of authorization and later at the time of settlement," id. ¶ 48. AAFCU does this by "releas[ing] the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debit[ing] the same transaction a second time." Id. ¶ 50. This allows AAFCU to charge overdraft fees on transactions "that were authorized into sufficient funds, and for which AAFCU specifically set aside money to pay." Id. ¶ 51.

On July 19, 2019; July 20, 2019; and August 7, 2019, Varga was charged APPSN Fees on debit card transactions "despite the fact that

2

the transactions had been authorized, prior to that day, on a sufficient available balance." Id. ¶ 60.

B.  **Retry Fees**

AAFCU also charges multiple fees on the same transaction. Id. ¶ 62. Specifically, when a consumer buys something but there are insufficient funds to cover the purchase, the merchant may attempt to process the transaction multiple times. Id. ¶¶ 61-62. AACFU may assess fees (Retry Fees) on each of those attempts after the initial fee on the first attempt. See id. AAFCU's Account Agreement states, "We assess a fee for each item that we either pay, which results in an overdraft, or do not pay, which would have resulted in an overdraft had we paid it." Id. ¶ 72. Further, AAFCU's Fee Schedule until March 1, 2020, stated that the fee for "Unpaid Non-Sufficient Funds (NSF)" was "$25/each." Id. ¶ 73. Varga incurred a Retry Fee on September 5, 2019 when she was charged two fees totaling $50 for one PayPal transaction. Id. ¶¶ 65-68.

## II. LEGAL STANDARD

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original) (citation omitted).

A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

3

defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a).

## III. DISCUSSION

AAFCU contends Varga's complaint should be dismissed because (1) the contract is unambiguous and allows for AAFCU's fee practices; (2) Varga's contract claims are preempted; (3) the Unfair Competition Law (UCL) claim fails because Varga lacks standing under the UCL, among other reasons; and (4) the breach of the implied covenant of good faith and fair dealing and money had and received claims fail for the same reason as the other claims. See Mot. at 10-23.

### A. Choice of Law

AAFCU cites to both Texas and California law, stating in a footnote that the Account Agreement contains a Texas choice of law provision. Mot. at 11 n.5. "Although there is some disagreement, most courts in this circuit hold that a claim should not be dismissed on a conflict of law analysis at the pleading stage, especially 'when dealing with a potential nationwide class action.'" Nguyen v. Barnes & Noble Inc., No. 8:12-cv-00812-JLS-DFM, 2015 WL 12766050, at *4 (C.D. Cal. Nov. 23, 2015) (citing Bias v. Wells Fargo & Co., 942 F. Supp. 2d 915, 929 (N.D. Cal. 2013) (reasoning that California's choice of law analysis "is more difficult, and premature" at the pleading stage "when dealing with a potential nationwide class action"); Andriesian v. Cosmetic Dermatology, Inc., No. 3:14-cv-01600-ST, 2015 WL 1638729, at *11 (D. Or. Mar. 3, 2015), report and recommendation adopted, No. 3:14-CV-01600-ST, 2015 WL 1925944 (D. Or. Apr. 28, 2015) (collecting cases to support that "most [courts] hold that a case should not be dismissed based on a conflict of law analysis prior to class certification.")). The Court declines to engage in a choice of law analysis based solely on the

4

pleadings and a footnote in the motion. The Court, therefore, considers whether Varga's complaint states a claim on which relief can be granted under either Texas or California law.

## B. Breach of Contract

Varga contracted with AAFCU for checking account and debit card services. FAC ¶ 118. AAFCU allegedly breached the terms of its Consumer Account Agreement by (1) charging APPSN Fees and (2) assessing multiple Retry Fees on the same item. See id. ¶¶ 39, 83, 119. AAFCU argues that the terms of the Account Agreement do not prohibit its conduct and thus, Varga's breach of contract claim fails. Mot. at 1-2. But the Account Agreement contains ambiguities that prevent dismissal at this stage. Varga offers a reasonable interpretation of the Account Agreement that supports her breach of contract claim.

Under California law, the elements of a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Coles v. Glaser, 2 Cal. App. 5th 384, 391 (2016). Under Texas law, the elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." EJ Madison, LLC v. Pro-Tech Diesel, Inc., 594 S.W.3d 632, 639-40 (Tex. App. 2019). These elements are similar enough that the analysis is the same under either state's law.

"Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." Bedrosian v. Tenet Healthcare Corp., 208 F.3d 220 (9th Cir. 2000) (citing Rennie & Laughlin, Inc. v. Chrysler Corp., 242 F.2d 208, 209-12 (9th Cir. 1957); Case v. State Farm Mut. Auto Ins. Co., 294 F.2d 676, 678 (5th Cir. 1961)). But a breach of contract claim may not be dismissed if the contract's terms are ambiguous. See Consul Ltd. v. Solide Enters., Inc., 802 F.2d 1143, 1149 (9th Cir. 1986). Whether a contract is ambiguous is a question of law. WYDA Assocs. v. Merner, 42 Cal. App. 4th 1702,

5

1710 (1996); Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983). "[A]ny ambiguities caused by the draftsman of the contract must be resolved against that party." Neal v. State Farm Ins. Cos., 188 Cal. App. 2d 690, 695 (1961); see also Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734, 737 (Tex. 1990).

Regarding the APPSN Fees claim, Varga and AACFU refer to provisions in the Account Agreement including disclosures explaining debit card transactions, FAC ¶¶ 33-34, Mot. at 5-6; the Electronic Funds Transfer Agreement, FAC ¶ 36; and the Overdraft Disclosure, FAC ¶ 37; Mot. at 5, 7. Regarding the Retry Fees claim, the parties refer to overdraft fee provisions, FAC ¶ 72; AAFCU's Fee Schedules, id. ¶ 73, Mot. at 9; and AAFCU's Bounce Protection, FAC ¶ 74-76. The Court analyzes these provisions and documents together to address AAFCU's assertion. See Mountain Air Enters., LLC v. Sundowner Towers, LLC, 3 Cal. 5th 744, 759 (2017) ("several contracts relating to the same matters are to be construed together"); EJ Madison, 594 S.W.3d at 640 ("In determining the objective intent of the parties, we examine the entire instrument in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless.").

### 1. APPSN Fees

AAFCU claims that the Account Agreement clearly specifies when AAFCU makes a "fee determination" – the determination that an account has insufficient funds and AAFCU will charge an overdraft fee. Mot. at 5. Varga alleges that the "Account Agreement makes clear the fee determination is made at the moment of" the preauthorization hold because the funds are held "off-limits for other transactions. Id. ¶¶ 35-6. Varga supports this by pointing to several provisions of the account agreement. First, AAFCU asserts the Agreement explains that a consumer must have funds "sufficient to *pay* any withdrawal order . . . or item *presented for payment*," which communicates "an overdraft fee is triggered when a transaction is ***presented*** against an insufficient available balance and ***paid*** as an overdraft, not when it is authorized." Id. at 11-12. Second, AAFCU argues the Agreement explains the

6

mechanics of a preauthorization hold, which makes clear that "the preauthorization is not the actual transaction," meaning AAFCU cannot make the fee determination at that time because it does not know what the actual charge for the transaction will be. Id. at 13-14.

When considered together, these provisions are ambiguous as to when AAFCU will make the fee determination. The Overdraft Disclosure states "[a]n overdraft occurs when you do not have enough money available in your checking account to cover a transaction, but we pay it anyway." FAC ¶ 37. The Electronic Funds Transfer Agreement explains:

> When we preauthorize the transaction, we commit to make the requested funds available when the transaction finally posts and as such, we generally place a temporary hold against some or all of the funds in the Account linked to your Debit card, based on the amount of the preauthorization request from the merchant. We refer to this temporary hold as a "preauthorization hold," and **the amount of the preauthorization hold will be subtracted from your available balance** as authorization requests are received by us throughout each day. Until the transaction finally settles or we otherwise remove the hold . . . the funds subject to the hold will not be available to you for other purposes.

Id. ¶ 36 (emphasis added). Varga plausibly claims that a consumer would understand these provisions together to mean AAFCU makes the fee determination at the time of the preauthorization hold. See id. ¶¶ 36-39. The phrase "will be subtracted from your available balance" is ambiguous as to whether AAFCU determines if there are sufficient funds to pay the transaction at that time. Further, the Overdraft Disclosure states the fee is imposed if there are inadequate funds "to cover a transaction." A consumer could reasonably construe that provision as requiring overdraft fees be assessed at the time of the transaction, meaning at the time of the preauthorization hold, as opposed to when the transaction posts.

7

Contrary to AAFCU's argument, dkt. 25 (Reply) at 1-2, the use of the word "pay" does not unambiguously indicate the fee is not determined until the transaction posts. Because the language is ambiguous, the Court construes it against AAFCU. See Neal, 188 Cal. App. 2d at 695. While it is clear that a consumer must have funds to "*pay* any withdrawal order," Mot. at 11-12, a consumer could still think there was a sufficient amount in the account if there were positive funds when AAFCU placed a preauthorization hold on the funds – as that seems to be the very purpose of the hold. The word "pay" is not ambiguously synonymous to the time the transaction posts to the consumer's account. Though it is not particularly relevant to the Court's analysis, AAFCU's disclosures regarding these overdraft fees are substantially less clear than the examples of other banks' disclosures that Varga provides. See FAC ¶¶ 56-58. Varga plausibly alleges a claim for breach of contract based on the APPSN Fees.

**2. Retry Fees**

AAFCU argues that the Account Agreement unambiguously allows it to charge Retry Fees. First, AAFCU claims that the statement in the Account Agreement that AAFCU will "assess a fee for *each* item that we either pay, which results in an overdraft, or do not pay, which would have resulted in an overdraft had we paid it" authorizes AAFCU to asses a fee for each attempt to charge the transaction. Mot. at 5, 17. Second, AAFCU alleges the use of "each" in its Fee Schedule does not mean "per item" or "per each item," and therefore does not prohibit AAFCU from charging multiple Retry Fees stemming from the same transaction. Id. at 17.

Again, the Agreement is not clear as AAFCU claims. As Varga notes, the disclosure states "[w]e assess <u>a fee for each item</u> that we either pay, which results in an overdraft, or do not pay, which would have resulted in an overdraft had we paid it," Opp'n at 20, could lead a consumer to believe that only one fee (indicated by the singular "a fee") would be levied for each item the consumer attempted to purchase, not for each attempt by the merchant to process the transaction. Further, AAFCU's statement that the NSF fee is "$25/each" does not clarify

8

anything, as there is no indication of what "each" modifies. Construing the ambiguous language against the drafter, a consumer could believe that the "each" refers to the specific item the consumer attempts to purchase, not the attempt to process the transaction.

### 3. Preemption

While the National Bank Act (NBA) preempts certain areas of federal bank regulation, including fee disclosures, "[t]he NBA and OCC regulations do not preempt the entire field of banking." Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 555 (9th Cir. 2010). "Federally chartered banks are subject to state laws of general application in their daily business to the extent that such laws do not conflict with the letter or the general purposes of the act." Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11 (2007). It is "well established that true breach of contract and affirmative misrepresentation claims are not federally preempted, even if the result of those claims may affect a federal credit union's fee disclosures." Lambert v. Navy Fed. Credit Union, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *2 (E.D. Va. Aug. 14, 2019) (citing, among others, Gutierrez v. Wells Fargo Bank, NA, 704 F.3d 712, 726 (9th Cir. 2012) (finding that claims "based on Wells Fargo's misleading statements about its posting method" under the fraudulent prong of California's Unfair Competition Law were not preempted because that law "does not impose disclosure requirements but merely prohibits statements that are likely to mislead the public"); Hanjy v. Arvest Bank, 94 F. Supp. 3d 1012, 1025 (E.D. Ark. 2015) (finding that the plaintiffs' breach of contract and breach of the implied covenant of good faith and fair dealing claims were not preempted because the plaintiffs merely sought "to hold [the defendant bank] to the terms of its contracts").

Like claims under California wage and hour laws, Varga's breach of contract and breach of the implied covenant of good faith and fair dealing claims fall within state laws that do not "interfere[] with a national bank's *banking-related* functions or operations." See Green v. Bank of Am., N.A., 634 F. App'x 188, 190 (9th Cir. 2015). The breach of contract claim simply asserts the Account Agreement prohibited

9

AAFCU from charging fees in the manner it did. Varga's contract claim is not preempted as it is a state law contract claim and does not interfere with banking-related functions. Because Varga has plausibly alleged a breach of contract claim with regard to the APPSN transactions and Retry Fees, AAFCU's motion to dismiss the First Cause of Action for breach of contract is DENIED.

### C.     California UCL Claim

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Any of these prongs may support a UCL cause of action. See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). AAFCU argues that Varga's UCL claim should be dismissed because (1) it is preempted by federal law, (2) the alleged practices are not unfair, (3) Varga has not pleaded any violation of another law for an "unlawful" prong, (4) the UCL claim is derivative of her flawed contract claim, (5) Varga lacks standing, and (6) Varga failed to allege she is entitled to equitable remedies under the UCL. See Mot. at 19-22.

Varga now "declines to pursue any violation of the 'unlawful' or 'unfair' prongs," Opp'n at 29 n.11, so the Court analyzes only the claim under the "fraudulent" prong, which is not preempted. See Gutierrez, 704 F.3d at 726.[1]

A business practice is "fraudulent" within the meaning of section 17200 if "members of the public are likely to be deceived." Comm. on Children's Television v. General Foods Corp., 35 Cal.3d 197, 211 (1983) (internal citations omitted). Under Federal Rule of Civil Procedure 9(b), fraud claims must be pleaded with particularity. Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009). Fraud allegations must "be specific enough to give defendants notice of the particular

---

[1] Because Varga has declined to pursue claims under the "unfair" or "unlawful" prong of the UCL, the Court does not address AAFCU's arguments as to those prongs. But AAFCU is correct that these claims are preempted. Mot. at 19-20 (citing Gutierrez, 704 F.3d at 725).

10

misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal punctuation omitted). "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

While the FAC focuses on accusations that AAFCU's behavior was "unfair," and "unlawful," see FAC ¶¶ 131-139, it also attacks specific representations in the Account Agreement and identifies why those representations are misleading. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) ("Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)."). Varga identifies specific provisions that she claims are misleading, see, e.g., FAC ¶¶ 33-37; explains why the provisions are misleading, see, e.g., id. ¶¶ 39-41, 139; and includes guidance from the Consumer Financial Protection Bureau that supports her interpretation, id. ¶¶ 22, 134. These allegations are "*more* than the neutral facts necessary to identify the transaction" and "set forth what is false or misleading about a statement, and why it is false." In re GlenFed, 42 F.3d at 1548.

As AAFCU notes, however, claims under the UCL also require "a showing of a causal connection or reliance on the alleged misrepresentation." Mot. at 20-21 (quoting Hall v. Time, Inc., 158 Cal. App. 4th 847, 855 (2008)). "[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct.'" In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009) (alteration in original) (citing Mirkin v. Wasserman, 5 Cal. 4th 1082, 1110-11 (1993)).

Varga does not allege (plausibly or otherwise) that she relied on these claimed misrepresentations. See, e.g., Birdsong v. Apple, Inc., No. 06–02280, 2008 WL 7359917, at *6 (N.D. Cal. June 13, 2008) ("A showing of reliance on a false or misleading representation is

11

required to support a UCL claim based on the theory that a plaintiff was deprived of the 'benefit of the bargain,' i.e., that the plaintiff would not have purchased a product or would have paid less money for it had the representation not been made."). Nowhere in the FAC does Varga allege that she saw, read, or relied on any representations by AAFCU regarding its fee practices. AAFCU raises this argument in its motion but Varga does not address it in her opposition. The Court therefore finds Varga has failed to adequately plead actual reliance as required to establish standing under the UCL. The UCL claim is DISMISSED with leave to amend only to the extent it is premised on fraudulent misrepresentation.

### D.     Breach of the Implied Covenant of Good Faith

AAFCU argues that Varga's claim for breach of the implied covenant of good faith and fair dealing fails because (1) Texas does not generally recognize the duty of good faith and fair dealing, (2) California limits the covenant of good faith and fair dealing to assuring compliance with the express terms of the contract, and (3) the implied covenant of good faith and fair dealing claim is duplicative of the breach of contract claim. Mot. at 22-23.

Texas law does not recognize this duty in all contractual relationships, Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1, 908 S.W.2d 415, 418 (Tex. 1995), but the duty can arise from three types of relationships: fiduciary, special, and confidential. Vauthrin v. Prudential Ins., 16 F.3d 1214, *2 (5th Cir. 1994) (citing Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 593-94 (Tex. 1992). While the duty can exist "in special relationships marked by shared trust or an imbalance in bargaining power," there is no such duty between a mortgagor and mortgagee or creditor and guarantor, for example. Fed. Deposit Ins. Corp. v. Coleman, 795 S.W.2d 706, 708–09 (Tex. 1990).

Under California law, on the other hand, "[t]here is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." Harm

12

v. Frasher, 181 Cal. App. 2d 405, 417 (1960).  A breach of contract may be established on the basis of either an express provision of the contract or on the implied covenant of good faith and fair dealing.  See Storek & Storek, Inc. v. Citicorp Real Estate, Inc., 100 Cal. App. 4th 44, 55 (2002).  An implied covenant of good faith and fair dealing cannot, however, contradict the express terms of a contract.  Id. (citing Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 374 (1992)).

Neither party deals in depth with the breach of the implied covenant claim.[2]  Both generally refer to their positions concerning the alleged breach of contract.  Varga also alleges that AAFCU in "bad faith" "misrepresent[ed] to accountholders the true nature of AAFCU's assessment of its OD and NSF Fees."  FAC ¶¶ 124.[3]  At this early stage of the proceedings, Varga's allegation that AAFCU misrepresented its fees in bad faith is sufficient to state a claim for breach of the implied covenant.  Therefore, AAFCU's motion to dismiss the First Cause of Action for breach of the implied covenant of good faith and fair dealing is DENIED.

### E. Money Had and Received

AAFCU argues that Varga's claim for money had and received should be dismissed because it rises and falls with her other claims.  Mot. at 23.  But the Court has denied AAFCU's arguments relating to Varga's contract claims.  Courts need not "manufacture arguments for a[] [party], and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review."  Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009); see also

---

[2] As noted earlier, the Court declines to engage in a choice of law analysis at this stage in the case.  See Nguyen, 2015 WL 12766050, at *4.  Therefore, while Varga likely does not have a claim for breach of the implied covenant good faith and fair dealing under Texas law, stating a claim on which relief could be granted under California law is sufficient for the claim to proceed.

[3] It is too early to determine whether this is really a "failure to disclose" claim in disguise.  If it is, then it is preempted.

13

Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929-30 (9th Cir. 2003) ("However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. . . . We require contentions to be accompanied by reasons."); Mahaffey v. Ramos, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived"). Because AAFCU asserts no arguments other than that this claim rises and falls with Varga's other claims, AAFCU's motion to dismiss the Second Cause of Action is DENIED.

## IV. CONCLUSION

AAFCU's motion is GRANTED in part and DENIED in part. The Fourth Cause of Action for Violation of the Unfair Competition Laws, Bus. & Prof. Code §17200 et seq., is DISMISSED with leave to amend. The motion is otherwise DENIED. An amended complaint must be filed no later than December 29, 2020. Failure to file an amended complaint by that date will waive Plaintiff's right to do so. If Plaintiff fails to file an amended complaint by that date, Defendant must answer the remaining causes of action within twenty days after that date. Leave to amend is granted only to address the specific issues raised by the motion. The Court does not grant leave to add new defendants or new claims. Leave to add new defendants or new claims must be sought by a properly noticed motion.

IT IS SO ORDERED.

Date: December 1, 2020

                             Dale S. Fischer
                             United States District Judge

14