UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICE CHAMBERS, *on behalf of herself and all others similarly situated*,

                Plaintiff,

– *against* –

HSBC BANK USA, N.A.,

                Defendant.

<u>**OPINION AND ORDER**</u>

19 Civ. 10436 (ER)

RAMOS, D.J.:

    Patrice Chambers, on behalf of herself and all persons similarly situated, brings this action against HSBC Bank USA, N.A. alleging that HSBC improperly imposes fees for transactions involving insufficient funds in client accounts. In her complaint, Chambers asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and a violation of New York General Business Law § 349. Pending before the Court is HSBC's motion to dismiss the complaint in its entirety and with prejudice. *See* Doc. 18.

    For the reasons set forth below, HSBC's motion to dismiss the complaint is GRANTED in part and DENIED in part.

I.    BACKGROUND

    **A. Factual Background**

    Chambers has a consumer checking account with HSBC. Her relationship with HSBC is governed by a written agreement titled "Rules for Consumer Deposit Accounts" (the "Rules") and a written addendum titled "Terms & Charges Disclosure" (the "Disclosures"). Compl. Exs. B, A, respectively. According to these documents, if a customer does not have enough money in their account to cover a transaction, HSBC may pay the overdraft and charge the associated Insufficient Funds ("NSF") fee. Compl. Ex. B at 3–4. The Disclosures provide that: "[f]or each withdrawal, check, electronic funds

transfer **or other item** that overdraws your account," HSBC will charge an NSF fee of $35.  *See* Compl. Ex. A at 2 (emphasis added).  The Rules define the term "item" as follows:

> An "**item**" includes checks, substitute checks, remotely created checks, withdrawal slips or other in-person transfers or withdrawals, service charges, electronic items or transactions, including withdrawals made from an Automated Teller Machine, everyday or recurring debit card transactions, pre-authorized payments or transfers, **ACH transactions**,[1] telephone initiated transfers, online banking transfers or bill payment instructions, and any other instruments or instructions for the payment, transfer or withdrawal of funds including an image or photocopy of any of these.
>
> Compl. Ex. B at 3-4 (emphasis added).

Chambers alleges that she authorized a payment to Santander Bank on May 17, 2019.  Compl. ¶ 14.  HSBC returned this payment because Chambers had insufficient funds in her account.  *Id*. ¶ 15.  Chambers was charged an NSF fee in connection with this transaction, which she concedes was an appropriate charge under the Rules and Disclosures.  *Id*.  On May 29, 2019, twelve days later, the payment Chambers initiated on May 17 was presented a second time to HSBC by Santander.  *Id*. ¶ 16.  The transaction was again returned to due to insufficient funds in Plaintiff's account and she was again charged an NSF fee for the transaction.  *Id*.

Chambers also authorized a payment to Geico on June 21, 2019.  *Id*. ¶ 19.  This payment was returned due to insufficient funds and she was assessed an NSF fee, which she again concedes was appropriate.  *Id*. ¶ 20.  Six days later, on June 27, 2019, the payment was again presented by Geico to HSBC Bank.  *Id*. ¶ 21.  It was also returned due to insufficient funds, resulting in another NSF fee.  *Id*.

Chambers alleges that the second NSF fee assessed in connection with the Santander Bank and Geico transactions was improper.

---

[1] An "ACH transaction," also known as an Automated Clearing House transaction, refers to automated electronic transactions such as Plaintiff's attempted payments to Geico and Santander, as described herein.

### B. Procedural History

On November 8, 2019, Chambers brought suit against HSBC, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and a violation of GBL § 349.  Doc. 1.  On March 6, 2020, HSBC filed the instant motion to dismiss Chambers' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. 18.

## II. MOTION TO DISMISS THE COMPLAINT

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).  However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it."

3

*Halebian v. Berry*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).

### B. Analysis

#### 1. Plaintiff Has Stated a Claim for Breach of Contract

At the motion to dismiss stage, a breach of contract claim may be dismissed if a contract unambiguously authorizes the defendant's alleged conduct. *See MS Fed. Acquisition, LLC v. U.S. Bank Nat'l Ass'n*, No. 14 Civ. 7794 (LTS), 2015 WL 4461740, at *3 (S.D.N.Y. July 21, 2015). If a material contractual term is ambiguous, however, dismissal is inappropriate because all contractual ambiguities must be resolved in favor of the plaintiff at this stage. *See Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). To assess whether contractual language is ambiguous under New York law, courts in this Circuit examine whether the language "could suggest more than one meaning when viewed objectively by a reasonably intelligent person." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (internal quotation marks omitted). Such person would be "cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (internal citation and quotation marks omitted).

4

Here, Plaintiff and Defendant dispute whether HSBC's conduct was authorized under the Rules and Disclosures because they disagree on the meaning of the term "item." Plaintiff argues that each iteration of an attempted transaction is not a new "item" each time it is returned for insufficient funds and reprocessed, especially when Plaintiff took no action to resubmit it. Compl. ¶ 26. Further, Plaintiff argues that the term "item" has a well-understood industry meaning of referring to payments that follow an accountholder's affirmative instruction for payment, as opposed to a merchant's attempt to collect on that payment. Plaintiff's Opposition to Defendant's Motion to Dismiss, Doc. 26 at 7–8. Therefore, Plaintiff asserts that the term "item," when viewed objectively by a reasonably intelligent person, would encompass all iterations of the same payment.

In support, Plaintiff also notes that many of HSBC's peer banks only assess one overdraft fee per attempted payment: For example, JP Morgan Chase explicitly states in its disclosures that it will charge a maximum of one NSF fee on an item if it is returned multiple times within a 30-day period. Doc. 26 at 7. Similarly, other banks that *do* employ multiple fee practices expressly disclose that they will assess more than one NSF fee on a single item. *See* Compl. ¶¶ 36–39. Plaintiff argues that these express disclosures would be unnecessary if an "item" were defined so that each attempt at a reprocessed payment were a new "item." Doc. 26 at 8.

HSBC argues that the Rules and Disclosures unambiguously permit it to charge an NSF fee each time an "item" is presented. It points to a section of the Disclosures stating that NSF fees may be charged "[f]or *each* withdrawal, check, electronic funds transfer or other item that overdraws your account," Compl. Ex. A at 2 (emphasis added), and language in the Rules stating that an "item" may include "ACH transactions . . . and any other instruments or instructions for the payment, transfer or withdrawal of funds . . . ." Compl. Ex. B at 4. HSBC asserts that this plain language unambiguously shows that "each" payment request made to HSBC is a separate "item," and is therefore subject to an NSF fee. Memorandum of Law in Support of HSBC's Motion to Dismiss, Doc. 19 at 6.

5

The parties also dispute the significance of *Perks v. TD Bank, N.A.*, a case in this District based on similar contractual language. *See* 444 F. Supp. 3d 635 (S.D.N.Y. 2020). At issue in *Perks* was TD Bank's analogous NSF fee, which TD Bank's accountholder agreement also provided may be charged "per item." *Perks*, 444 F. Supp. 3d at 638. The contract in *Perks* defined "item" as including "*a[n] . . . ACH transaction . . . and any other instruction or order for the payment, transfer, deposit or withdrawal of funds*." *Id.* at 638–9 (emphasis in original). Plaintiff Perks attempted to make three one-time PayPal transfers via pre-authorized transactions, which were rejected by TD Bank because Perks' account lacked sufficient funds. *Id.* at 639. TD Bank charged Perks an NSF fee for each of the three transfers, and when PayPal resubmitted those transactions for payment a week later, TD Bank rejected them again and charged new NSF fees, just as HSBC did here. *Id.* TD Bank also argued that its agreement expressly authorized it to assess NSF fees on *each* submission and resubmission of a transaction. *Id.*

The Court in *Perks*, however, determined that the plaintiffs' interpretation of the contract was reasonable and denied the motion to dismiss. *Id.* at 640. The court explained that "the definition of 'item' is ambiguous with regard to whether a resubmission of an ACH transaction is a separate item or is part of the same initial ACH transaction" and that this ambiguity must be read in favor of the plaintiffs at the motion to dismiss stage. *Id*. at 640. Chambers thus relies on *Perks* to assert that it is at best ambiguous whether an attempted payment becomes a new "item" when it is re-presented by HSBC here. Doc. 26 at 5.

HSBC argues that that *Perks* is distinguishable based on the underlying contractual language. It asserts that, while the definition of "item" in the *Perks* contract included the phrase "ACH transaction" in the singular, the Disclosures at issue here use the plural phrase "ACH *transactions*." Reply in Support of HSBC's Motion to Dismiss, Doc. 30 at 6 (citing Compl. Ex. B. at 4) (emphasis added). Because the Disclosures refer to "ACH transactions" in the plural, HSBC argues that any subsequent ACH transaction

that is resubmitted for payment should therefore be considered a new "item," and that this argument failed in *Perks* because an ACH transaction was explicitly defined in the singular in that case.  Doc. 30 at 5–6.  HSBC urges the Court to instead analogize this case to *Lambert v. Navy Fed. Credit Union*, No. 19 Civ. 103(LO)(MSN), 2019 WL 3843064 (E.D. Va. Aug. 14, 2019).  In *Lambert*, a Virginia district court found that an agreement with similar terms unambiguously permitted a credit union to charge users a fee for each "ACH debit request."  2019 WL 3843064, at *5.[2]

Despite HSBC's arguments, the Court finds the decision in *Perks* persuasive and undistinguishable.  The contract in *Perks* defined "item" as "a[n] . . . ACH transaction . . . and any *other* instruction or order for the payment, transfer, deposit or withdrawal of funds."  *Perks*, 444 F. Supp. 3d at 640.  (emphasis and alterations in original).  The court reasoned that there were two equally plausible interpretations of the contract based on this language.  *Id.*  First, one could "read '[an] ACH transaction' as referring to the original submission and 'any other instruction or order' as referring to any resubmission of an ACH transaction."  *Id.*  Alternatively, one could "read '*other*' orders as meaning orders that [were] not one of the previously enumerated types of transaction and thus that '[an] ACH transaction' necessarily refers to both the original submission and any subsequent resubmission of the transaction."  *Id.* (emphasis in original).  Because the plaintiffs' interpretation of "item" was also reasonable, the court found that the term was ambiguous and denied the motion to dismiss.  *Id.*

Here, as in *Perks*, the proposed interpretations of "item" by HSBC and Chambers are both reasonable based on the Rules and Disclosures.  The Rules and Disclosures state in relevant part:  "An 'item' includes . . . ACH transactions . . . and any other instruments or instructions for the payment, transfer or withdrawal of funds."  Compl. Ex. B at 4.  It is

---

[2] The contract in *Lambert* provided that "[a] fee may be assessed . . . for each returned debit item."  *Id.* at *3 (alterations in original).  The contract further listed  "Automated Clearing House (ACH) debits" as a type of "item."  *Id.*

7

plausible, as Defendant urges, to read the original request for payment *and* any subsequent resubmission of that payment as being separate "ACH transactions" and thus each constituting a separate "item," which would authorize multiple NSF fees under the Rules and Disclosures.  However, the Court finds it equally plausible that the phrase "ACH transactions" merely refers to ACH transactions as a general category of "item," of which a single "ACH transaction" is limited to the initial payment request authorized by the accountholder.³  Moreover, Defendant's argument that the Disclosures are unambiguous because they authorize an NSF fee for "*each* . . . item" that overdraws an account is unpersuasive, because the ambiguity here pertains to what qualifies as an "item" to begin with, not whether NSF fees may be incurred for "each" of them.  *See* Doc. 19 at 8 (alterations added, emphasis in original).

Defendant's invocation of the Eastern District of Virginia's decision in *Lambert v. Navy Fed. Credit Union* does not change the Court's determination that the HSBC Rules and Disclosures are ambiguous.  *See* No. 19 Civ. 103 (LO)(MSN), 2019 WL 3843064 (E.D. Va. Aug. 14, 2019).  As the court in *Perks* observed, the contract in *Lambert* utilized a more expansive definition of the term "item" than is used either here or in *Perks*, defining "item" to include "*all* ACH debits."  444 F. Supp. 3d. at 641 (*quoting Lambert*, 2019 WL 3843064, at *3–4) (emphasis added).  This is broader than the term "ACH transactions," both through the explicit use of the word "all" and the clarification that it refers to debits, rather than the more ambiguous "transactions."  Moreover, when "other courts have found similar contractual language to be both unambiguous and

---

³ Similarly, while the contract in *Perks* was drafted to list examples of an "item" in the singular and the Disclosures here list such items in the plural, it is not clear that the meaning of a single "ACH transaction" must differ between these two contracts. Under the interpretation Plaintiff urges here, "ACH transactions" in the plural would refer to any or all of an accountholder's initial payment authorizations with a merchant, but not the merchant's subsequent attempts to collect on those payments.  This meaning is plausibly supported by the contractual language in both *Perks* and this case.  *Compare Perks*, 444 F. Supp. 3d at 640 ("An 'item' includes a[n]… ACH transaction … and any *other* instruction or order for the payment, transfer, deposit or withdrawal of funds") *with* Disclosures at 7 ("An 'item' includes . . . ACH transactions … or any other instruments or instructions for the payment, transfer or withdrawal of funds.").

ambiguous," such case law is of limited guidance on a motion to dismiss. *See Coleman v. Alaska USA Fed. Credit Union*, No. 19 Civ. 229 (HRH), 2020 WL 1866261, at *5 (D. Alaska Apr. 14, 2020) (determining that a similar contractual provision at issue may be ambiguous).

Plaintiff has thus sufficiently alleged a breach of contract resulting from the multiple NSF fees imposed due to the reprocessing of her payments. Plaintiff's proposed interpretation of the Rules and Disclosures may ultimately not prevail, but it is reasonable. Therefore, HSBC Bank's motion must be denied.[4]

### 2. Plaintiff's Breach of the Implied Covenant of Good Faith Claim is Dismissed

Under New York law, a claim for breach of the implied covenant "will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Merryman v. J.P. Morgan Chase Bank, N.A.*, No. 15 Civ. 9188 (VEC), 2016 WL 5477776, at *11 (S.D.N.Y. Sept. 29, 2016) (quoting *Boart Longyear Ltd. v. All. Indus., Inc.*, 869 F. Supp. 2d 407, 419 (S.D.N.Y. 2012)); *see also Perks*, 444 F. Supp. 3d at 641 ("When one party to a contract advances an interpretation that the other party disagrees with, breach of the express provision of the contract is the appropriate cause of action.").

Plaintiff's breach of contract and breach of implied covenant claims both arise from the same allegation: that HSBC inappropriately assessed NSF fees on payments resubmitted for processing. Because Plaintiff's claims arise from the same allegation, the Court finds them to be duplicative. As discussed in Section II.b.1., the breach of contract claim is appropriate in this case. Therefore, the breach of implied covenant of good faith

---

[4] Several other district courts have denied motions to dismiss in similar cases on the basis that both interpretations were reasonable. *See, e.g. McNeil v. Capital One Bank, N.A.*, No. 19 Civ. 473 (FB)(RER), 2020 WL 5802363 (E.D.N.Y. Sept. 29, 2020); *Coleman v. Alaska USA Fed. Credit Union*, 19 Civ. 0229 (HRH), 2020 WL 1866261 (D. Alaska Apr. 14, 2020); *Tannehill v. Simmons Bank*, No. 19 Civ. 140 (DPM), 2019 WL 717677 (E.D. Ark. Oct. 21, 2019).

claim is dismissed. *See Perks*, 444 F. Supp. 3d at 641 (dismissing implied covenant of good faith claim as duplicative when Plaintiff stated a valid breach of contract claim in analogous circumstances).

### 3. Plaintiff's GBL § 349 Claim is Dismissed

Plaintiff's claim under GBL § 349 is also duplicative of the breach of contract claim. "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted).

Plaintiff has not alleged an act or practice that was misleading in a material respect separate and apart from the complaint's allegations that HSBC breached the Rules and Disclosures. Even assuming Plaintiff's allegations are true—that is, assuming that Defendant improperly imposed a second NSF fee in contravention of the applicable agreements—Plaintiff has only alleged that HSBC did not follow its own contractual language. As such, the conduct alleged is that the defendant "failed to satisfy its contractual duties," rather than it "concealed or misrepresented any contractual terms." *See Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 575 (E.D.N.Y. 2015).

In such a situation, dismissal is appropriate. *See Perks*, 444 F. Supp. 3d at 641–2 (dismissing GBL § 349 claim when it was duplicative of the breach of contract claim). The § 349 claim is thus duplicative of the breach of contract claim, and is dismissed.[5]

### 4. Plaintiff's Unjust Enrichment Claim is Dismissed

A claim for unjust enrichment is not appropriate if the parties involved have a valid contract. The only exception is if there is a question as to whether the contract is valid. *See In re Navidea Biopharmaceuticals Litig.*, No. 19 Civ. 1578 (VEC), 2019 WL

---

[5] Because the Court dismisses the GBL claim, the Court need not decide Defendant's argument that the National Bank Act preempts Plaintiff's GBL claim. *See Perks*, 444 F. Supp. 3d at 642 n.7.

7187111, at *9 (S.D.N.Y. Dec. 26, 2019) ("Where a plaintiff *fails* to allege that the contract at issue is invalid or unenforceable, however, a claim for [unjust enrichment] is precluded.") (*citing Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009)) (emphasis in original).

The exception does not apply here, as there is no question that the contract between Plaintiff and HSBC is valid, only a question as to the scope of the term "item" within that contract. The Court similarly dismissed the unjust enrichment claim in *Perks*, where the plaintiff also did not allege that the contract at issue was invalid or unenforceable. *See Perks*, 444 F. Supp. 3d at 642. Therefore, the unjust enrichment claim is dismissed.

### III.  CONCLUSION

For the reasons set forth above, HSBC's motion to dismiss Chambers' complaint is GRANTED in part and DENIED in part. The parties are directed to appear for a telephonic conference on January 20, 2021, at 10am. To participate, the parties are directed to call (877) 411-9748 and enter access code 3029857# when prompted. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 18.

It is SO ORDERED.

Dated:   December 10, 2020
         New York, New York

                                                    _____
                                                      EDGARDO RAMOS, U.S.D.J.