**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PATRICE CHAMBERS, on behalf of
herself and all others similarly situated,

               Plaintiff,

    vs.

HSBC BANK USA, N.A.

               Defendant.

Civil Action No. 19-cv-10436

Hon. Edgardo Ramos

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S<br>UNOPPOSED MOTION FOR PRELIMINARY APPROVAL<br>OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 1

I.   Procedural History ........................................................................................... 1

II.  Summary of the Settlement Terms ................................................................... 2

    a.   The Class Definition ................................................................................ 2

    b.   The Settlement Benefits to the Class ...................................................... 3

    c.   Releases ................................................................................................... 4

    d.   Notice and Identification of Class Members ........................................... 4

    e.   Opt-Out and Objection Procedures and Deadlines .................................. 5

    f.   Settlement Administration ....................................................................... 5

    g.   Settlement Termination ........................................................................... 6

    h.   Attorneys' Fees and Costs ....................................................................... 6

    i.   Class Representative's Service Award ..................................................... 7

DISCUSSION ................................................................................................................. 7

I.   The Court Should Grant Preliminary Approval of The Settlement ................... 8

    a.   Plaintiff and Class Counsel Have Adequately Represented the Class ......... 8

    b.   The Settlement is the Result of Arm's Length Negotiations ...................... 9

    c.   The Settlement Is Fair, Reasonable, and Adequate. ................................. 10

        1.   Litigation Through Trial and Appeal Would Be Complex, Costly, and Long ....... 11

        2.   Discovery Has Advanced Far Enough to Allow the Parties to Reasonably Resolve the Case ....................................................................................... 13

        3.   Plaintiff Would Face Real Risks Establishing Liability and Damages If the Case Proceeded ...................................................................................... 14

        4.   Establishing A Class and Maintaining it Through Trial Would Not be Simple ..... 14

5.      The Settlement Fund is Adequate in Light of the Possible Recovery and Attendant Risks of Litigation ................................................................................................ 15

d.      The Terms of Any Proposed Award of Attorneys' Fees ........................................... 17

e.      Disclosure Of Side Agreements. ............................................................................. 17

f.      The Settlement Treats Class Members Equitably Relative To Each Other ................ 17

II.      The Court Should Certify The Settlement Class ....................................................... 18

a.      Ascertainability ..................................................................................................... 19

b.      Numerosity ............................................................................................................ 19

c.      Commonality ......................................................................................................... 20

d.      Typicality .............................................................................................................. 21

e.      Adequacy .............................................................................................................. 21

f.      Predominance: ....................................................................................................... 22

g.      Superiority ............................................................................................................ 22

III.      The Court Should Approve the Proposed Notice Plan and Administrator .................. 23

a.      CAFA Notices ....................................................................................................... 24

IV.      The Undersigned Counsel Should be Appointed to Represent the Class ..................... 25

CONCLUSION ................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Am. Medical Ass'n v. United Healthcare Corp.*,
2009 WL 1437819 (S.D.N.Y. May 19, 2009) ........................................................ 11

*Anwar v. Fairfield Greenfield Ltd., No. 1:11-cv-00813*,
2012 WL 2273332 (S.D.N.Y. 2012) ...................................................................... 24

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) .................................................................................... 21

*Bodnar v. Bank of Am., N.A.*,
2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) .......................................................... 16

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ............................................................. 13

*Charron v. Pinnacle Group N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................... 23

*Christine Asia Co. Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ....................................................... 15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .................................................................................. 11

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .................................................................................... 11

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .................................................................................. 21

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...................................................... 11, 14, 15

*Fairnella v. Paypal, Inc.*,
611 F. Supp. 2d 250 (E.D.N.Y. 2009) ................................................................... 24

*Ferrick v. Spotify USA Inc.*,
2018 WL 2324076 (S.D.N.Y. May 22, 2018) ....................................................... 15

*Fleisher v. Phx. Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sep. 9, 2015) ....................................................... 11

iii

**Page(s)**

*Flores v. One Hanover*,
    2014 WL 2567912 (S.D.N.Y. June 9, 2014) ................................................................ 13

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ....................................................................................... 11

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ..................................................................................... 23

*Hawthorne v. Umpqua Bank*,
    2015 WL 1927342 (N.D. Cal. Apr. 28, 2015) ........................................................... 16

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................................................. 9

*In re Checking Account Overdraft Litig.*,
    2015 WL 12641970 (S.D. Fla. May 22, 2015) ........................................................... 16

*In re Global Crossing Securities and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................... 12

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 698 (S.D.N.Y. 2019) ....................................................................... 18

*In re IPO*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ....................................................................... 12

*In re Marsh & McLennan, Cos. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................... 12, 13

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................... 13, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................. 18

*In re Petrobras Secs.*,
    862 F.3d 250 (2d Cir. 2017) ...................................................................................... 19

*Keirsey v. eBay, Inc*,
    2014 WL 644697 (N.D. Cal. 2014) ........................................................................... 24

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................... 12

**Page(s)**

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................ 18

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) ...................................................................... 22

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ...................................................................... 22

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ...................................................................... 15

*Odom v. Hazen Transport, Inc.*,
   275 F.R.D. 400 (W.D.N.Y. 2011) ........................................................... 14, 15

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*,
   772 F.3d 111 (2d Cir. 2014) ...................................................................... 19

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .................................................................................. 23

*Primavera Familienstiftung v. Askin*,
   178 F.R.D. 405 (S.D.N.Y. 1998) ............................................................... 19

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................ 16

*Steinberg v. Nationwide Mut. Ins. Co.*,
   224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................ 20

*Stinson v. City of New York*,
   282 F.R.D. 360 (S.D.N.Y. 2012) ............................................................... 21

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................... 12

*Sykes v. Mel Harris Associates, LLC*,
   285 F.R.D. 279 (S.D.N.Y. 2012) ............................................................... 20

*Thompson v. Metropolitan Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................ 14

*Torres v. Bank of Am.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..................................................... 16

**Page(s)**

*Trombley v. Nat'l City Bank*,
    826 F. Supp. 2d 179 (D.D.C. 2011) ........................................................................ 16

*Wal-Mart Stores v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................... 8, 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................. 20

**Statutes**

28 U.S.C. § 1715(b) ................................................................................................ 24, 25

New York's General Business Law § 349 ..................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. Passim

**Other Authorities**

7B Wright & Miller, Federal Practice and Procedure §1797.6 (3rd ed. 2005) ............................ 24

## INTRODUCTION

Plaintiff Patrice Chambers respectfully moves for Preliminary Approval of a proposed class action settlement that would resolve all claims against HSBC Bank USA, N.A. in this matter. The Settlement provides substantial relief for the Settlement Class and the terms of the Settlement exceed the requirements of the Federal Rules and applicable case law. The Settlement establishes a $1,975,000 Settlement Fund that will be used to pay Settlement Class Members and does not require Settlement Class Members to take any action to receive their *pro rata* shares. Settlement Agreement §§ 4.5, 4.16. Class members will not have to fill out any claim forms or submit documentation to substantiate their claims. Instead, Class Counsel and their expert will use HSBC's data to determine each Settlement Class Member's share of the Settlement Fund by using the formula described below. The Settlement is more than fair, reasonable, and adequate— and the Court should grant Plaintiff's Motion, certify the class for settlement purposes, approve the notice forms and plan incorporated into the Settlement Agreement, and order notice to be directed to the Settlement Class Members.

## BACKGROUND

### I.    Procedural History

On November 8, 2019, Plaintiff Patrice Chambers filed this lawsuit, alleging that HSBC breached its account agreements by charging customers more than one non-sufficient funds fee per ACH or check transaction. *See* Compl., ECF No. 1**.** Plaintiff asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violation of New York's General Business Law § 349. *Id.* ¶¶ 56-91. The Complaint seeks damages, restitution, and injunctive relief. *Id.* at 18.

HSBC moved to dismiss all of Plaintiff's claims on March 6, 2020. Mot., ECF No. 18. On December 10, 2020, the Court granted in part and denied in part Defendant's motion to

dismiss, allowing Plaintiff's breach of contract claim to proceed. Order, ECF No. 38.

HSBC answered the Complaint on December 23, 2020, ECF No. 40, and the parties engaged in discovery and, ultimately, settlement discussions. On September 13, 2021, the parties participated in a full-day mediation session with retired U.S. Magistrate Judge Morton Denlow, formerly of the United States District Court for the Northern District of Illinois. Although the initial mediation did not result in a settlement, the parties engaged in a second full-day mediation on November 23, 2021. With Judge Denlow's assistance, the Parties were able to reach an agreement and execute a term sheet that provided for confirmatory discovery into certain damages issues. Since then, the Parties have completed extensive confirmatory discovery and finalized the Settlement documents now before the Court. *See* Decl. of David M. Berger Supp. Mot. for Prelim. Approval Ex. A ("Settlement Agreement").

## II.    <u>Summary of the Settlement Terms</u>

### a.  **The Class Definition**

Plaintiff asks the Court to approve a settlement under Federal Rule of Civil Procedure 23(b)(3), on behalf of a Class defined as:

> All persons who, between November 1, 2013, and December 31, 2020, held an HSBC consumer deposit account and were charged and not refunded one or more Retry Overdraft Fees.

*Id.* § 2.2. The term "Retry Overdraft Fees" means:

> [A]ny insufficient funds fee ("NSF Fee") and/or unavailable funds fee ("UNA Fee") that HSBC Bank charged and did not refund the second time (or more) that a third party submitted a request for payment of a check (including an electronic check) or ACH transaction after the first attempt at payment was rejected and triggered an NSF Fee and/or UNA Fee because the account had an insufficient or unavailable balance.

*Id.* § 2.21. Excluded from the Class are HSBC Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which HSBC Bank has a controlling interest, any individual who

makes a timely election to be excluded, and all judges assigned to hear any aspect of this litigation as well as their immediate family members and chambers staff. *Id.* § 2.2.

### b. The Settlement Benefits to the Class

The Settlement establishes a cash settlement fund of $1,975,000. *Id.* § 3.1. The Settlement Fund will be used to issue payments to Settlement Class Members, pay Settlement administration costs, and if awarded by the Court, a service award to the named Plaintiff, Class Counsel's attorneys' fees, Class Counsel's litigation costs, and, if needed, a *cy pres* distribution. *Id.*

After deducting settlement administration costs, attorneys' fees, litigation costs, and the service award, the Settlement Fund will be paid directly to Class Members on a *pro rata* basis based on the amount of Retry Overdraft Fees paid by each Settlement Class Member. *Id.* § 4.16. The formula to determine the Settlement Class Member's distribution is:

$$Class\ Member's\ Pro\ Rata\ \% = \frac{Retry\ Overdraft\ Fees\ Paid\ by\ That\ Class\ Member}{Total\ of\ Retry\ Overdraft\ Fees\ Paid\ by\ All\ Class\ Members}$$

$$Class\ Member's\ Distribution = Class\ Member's\ Pro\ Rata\ \% \times Net\ Settlement\ Fund$$

*Id.*

The Settlement Administrator will issue settlement checks directly without the need for a claims process. *Id.* §§ 4.5, 4.17-4.18. Checks will be mailed out within 10 days of the Settlement becoming final. *Id.* § 4.18. For members whose check is returned as undeliverable, the Settlement Administrator shall seek an address correction, and checks will be re-sent consistent with the new address. *Id.* § 4.20. The Settlement checks will expire 90 days after they are issued. *Id.* § 4.18. The value of uncashed Settlement checks will be redistributed pro rata in a second distribution to those Class members who cashed their initial settlement checks. *Id.* § 4.21. The second distribution will only take place, however, if sufficient funds remain to cover printing and

mailing costs and still allow for checks of more than $5.00 per Class member. *Id.* With Court approval, any remaining funds will be paid as *cy pres* to a non-profit organization with a mission that closely parallels the interests of the Class. *Id.* § 4.25.

### c.  Releases

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will release HSBC and the associated "Released Parties" from all claims "based upon, arising out of, or relating to, the assessment of Retry Overdraft Fees that were or could have been alleged in the Action." *Id.* §§ 2.19 (full text of the release), 2.20 (definition of Released Parties); 2.21 (definition of "Retry Overdraft Fees"). As is typical in many settlement agreements, the release is narrowly tailored to the subject matter of the case—here, Retry Overdraft Fees—but is a comprehensive release of claims based on those allegations.

### d.  Notice and Identification of Class Members

The Parties recommend KCC as the Settlement Administrator. KCC is one of the leading notice administration firms in the United States. The Settlement Administrator will oversee the Notice Program, which is designed to provide the best notice practicable and is tailored to take advantage of the information HSBC has available about the Settlement Class. Berger Decl. ¶ 15.

For purposes of effectuating notice, HSBC shall supply the Settlement Administrator with an electronic file containing the following data:

- the name of the primary account holder;
- the Last Known Mailing Address associated with the account;
- the Last Known Email Address associated with the account; and
- the total amount of Retry Overdraft Fees (in US dollars) that were charged, and not refunded, to the account from November 1, 2013, through and including December 31, 2020.

Settlement Agreement § 4.6. With this data, the Settlement Administrator will issue notice to the class within sixty days of the Court granting Plaintiff's Motion for Preliminary Settlement

4

Approval. *Id*. § 6.2. The Settlement Administrator will provide email notice to Class Members in the first instance and postcard notice to Class Members whose email addresses either are invalid or unidentified *Id*. §§ 4.10-4.11, Ex. A (proposed email notice), Ex. C (proposed postcard notice). The Settlement Administrator will forward any postcard notices returned with forwarding address information to the given address. *Id*. § 4.11. If postcard notices are returned as undeliverable, and the files contain sufficient information, the Settlement Administrator will conduct a skip trace search and mail the Postcard Notice to the Class Member at the revised address. *Id*. Finally, the Settlement Administrator will augment the direct notice campaign with a Settlement Website that will contain all the notice information and allow the public to download pertinent case documents. *Id*. § 4.13, Ex. E. (proposed website notice), and an automated toll-free telephone line to assist Class Members with questions or who would like to receive paper copies of the documents posted on the Settlement Website. *Id*. § 4.26(a).

### e.   Opt-Out and Objection Procedures and Deadlines

All forms of notice explain the procedure by which a Settlement Class Member may opt out of or object to the Settlement, and object to Class Counsel's application for attorneys' fees, costs and expenses, and a service award for Ms. Chambers. Opt-out letters must contain the Settlement Class Member's name, address, signature, and statement that they wish to be excluded and any objections must also be made by written objection. The proposed opt-out and objection deadlines are 60 days after the Notice Deadline. *Id*. §§ 6.3-6.4, Exs. A, C, E.

### f.   Settlement Administration

The Settlement Agreement lists the duties of the Settlement Administrator, which include:

a.   Maintaining a toll-free automated telephone "help line" to assist Class Members

   b.   Maintaining the settlement website;

   c.   Establishing a post office box for receipt of requests for exclusions from the Class submitted by Class Members through the mail;

   d.   Recording and retain all opt-out requests and objections to the Settlement;

   e.   Performing any tax reporting or other duties required by federal, state, or local law;

   f.   Preparing reports, schedules, and declarations as requested by the parties;

*Id*. § 4.26 (a)-(n).

### g.  Settlement Termination

Either Party may terminate the Settlement if the Settlement is rejected, or materially modified by the Court or appellate court. *Id*. § 10.1. HSBC may also terminate the Settlement if the number of Settlement Class Members who timely request exclusion from the Settlement Class is equal or great than five percent of the Class. *Id.* § 9.1.

### h.  Attorneys' Fees and Costs

Class Counsel has performed all work in this case on a contingency basis and advanced all of their costs and expenses. Class Counsel will ask the Court to award them one-third of the Settlement Amount and also for reimbursement of their reasonably incurred litigation costs and expenses. *Id*. §§ 7.2-7.3. HSBC does not oppose Class Counsel's request for attorneys' fees and costs. *Id*. § 7.2. An award of Class Counsel's Fees is not a necessary term or a condition of this Agreement and the Court's decision to modify Class Counsel's fee request is not grounds for terminating the Settlement. *Id.* § 7.4. During the settlement negotiations, the parties did not discuss attorneys' fees, costs, or expenses until after they agreed on all other material terms of the Settlement. Berger Decl. ¶ 7.

### i.  Class Representative's Service Award

Additionally, Class Counsel will seek an award by the Court to the Class Representative in an amount up to $5,000 to be paid out of the Settlement Fund. *Id.* § 7.6. The award will compensate Plaintiff for the time and effort she spent in prosecuting this action. Specifically, Ms. Chambers assisted Class Counsel throughout the litigation, including by: (1) allowing Class Counsel to review her bank statements before filing suit; (2) participating in interviews with Class Counsel; (3) conducting an extensive search for relevant documents and evidence; (4) assisting with written discovery responses; (5) keeping apprised of the case and conferring with Class Counsel throughout litigation; and (6) agreeing to a class settlement that is in the bests interests of the putative class members. In doing so, Plaintiff was integral to the case. Berger Decl. ¶ 24. The Court granting a Service Award is not a necessary term or condition of the Settlement Agreement and the Court's decision to modify or deny this request is not grounds for terminating the Settlement. *Id.* § 7.7.

## DISCUSSION

District courts assess proposed class action settlements in two phases, commonly referred to as "preliminary approval" and "final approval." At preliminary approval, courts "direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purpose of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Below, Plaintiff details why this motion should be granted and notice sent to the class. In short, the settlement is poised to provide substantial relief to class members and deliver that relief without an intervening claims process, making the settlement fair, reasonable, and

adequate, and thus worthy of the Court's approval. And certification of the class for settlement

purposes is appropriate under both Rule 23(a) and Rule 23(b)(3).

**I.**    **The Court Should Grant Preliminary Approval of The Settlement**

The Settlement is an excellent result for the Class that should be approved. The Second

Circuit has long recognized the "strong judicial policy in favor of settlements, particularly in the

class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005). "The

decision to give notice of a proposed settlement to the class is an important event. It should be based

on a solid record supporting the conclusion that the proposed settlement will likely earn final

approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1), 2018 Advisory

Committee's Notes.

Rule 23(e)(2) provides a checklist of factors to consider when assessing whether a proposed

settlement is fair, reasonable, and adequate. Below, Plaintiff analyzes each factor in turn,

demonstrating that the settlement is fair and that the Rule 23(e)(2) factors weigh in favor of

approving it.

**a.    Plaintiff and Class Counsel Have Adequately Represented the Class**

The first factor to consider under Rule 23(e)(2)(A) is the adequacy of representation by

the class representatives and attorneys. This includes "the nature and amount of discovery"

undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), Advisory Committee's Notes.

Here, Ms. Chambers and Class Counsel have adequately represented the class. First,

Class Counsel have extensive experience in class action litigation in general, and particularly

class actions against financial institutions over account service fees. Berger Decl. ¶ 19. In

litigating this action, Class Counsel conducted extensive investigations relating to the claims,

underlying events, and transactions alleged in the Complaint, including through formal written

discovery, substantial informal exchanges of information, sets of transactional data and analyses,

and the retention of an expert to investigate how to identify, measure, and quantify damages. *Id.* ¶ 4. Additionally, Class Counsel engaged in written advocacy on the claims, including in opposing HSBC's motion to dismiss.

Similarly, Ms. Chambers diligently represented the class. She actively participated in the litigation and discovery, spent considerable time discussing the case with Class Counsel and reviewing the relevant facts, assisting with discovery responses, and searching for relevant and responsive documents. *See* Berger Decl. ¶ 24. She has remained in regular contact with Class Counsel and acted with the interests of the class in mind. *Id.*

In sum, Ms. Chambers and Class Counsel "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SKW), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Accordingly, Class Counsel and the Plaintiff have adequately represented the Class in accordance with Rule 23(e)(2)(A).

### b. The Settlement is the Result of Arm's Length Negotiations

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B) Advisory Committee's Note (2009).

There are multiple indicia here of the arm's length nature of the negotiations. First, the parties did not begin negotiations until after the Court ruled on HSBC's motion to dismiss and they had begun discovery. Berger Decl. ¶¶ 3-6. In addition, Class Counsel have extensive experience litigating and settling nationwide class actions and are of the opinion that the

Settlement is a good result for the Settlement Class. Berger Decl. ¶¶ 19, 23. In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience litigating dozens of cases involving similar facts and identical legal theories to those alleged in the Complaint. *Id*. ¶ 5. Class Counsel thoroughly investigated and analyzed Plaintiff's claims, HSBC's liability, class-wide damages theories, and HSBC's defenses. Class Counsel reviewed extensive data files with the assistance of their expert and did not finalize the settlement until after completing confirmatory discovery. *Id*. ¶ 10. They were thus able to knowledgably evaluate the strengths and weaknesses of their claims and their suitability for class treatment. *Id*.

Second, the parties resolved the litigation with the assistance of a well-respected mediator, Judge Morton Denlow (Ret.). *Id.* ¶ 6. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc. ("Visa")*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting Manual for Complex Litig. (Third) § 30.42 (1995)). In sum, the Court can be confident of the arm's-length nature of the process.

### c.    The Settlement Is Fair, Reasonable, and Adequate.

The third factor to be considered is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee's Notes.

The Second Circuit has identified nine factors (the *Grinnell* factors) to be considered in

determining the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see Am. Medical Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800(LMM), 2009 WL 1437819, at *3-4 (S.D.N.Y. May 19, 2009) (noting that the *Grinnell* factors are a "useful guide" at the preliminary approval stage). "[N]ot every factor must weigh in favor of the settlement, but rather the court should consider the totality of these factors in light of the particular circumstances."[1] *Fleisher v. Phx. Life Ins. Co.*, No. 11 Civ. 805 (CM) (JCF), 2015 WL 10847814, at *5 (S.D.N.Y. Sep. 9, 2015).

### 1. Litigation Through Trial and Appeal Would Be Complex, Costly, and Long

Had the parties not settled, the litigation would have been risky, protracted, and costly. Many hurdles lied ahead for a successful prosecution. To begin, the case presents its own risks that could stand in the way of class members receiving relief. For example, Plaintiff must overcome a contractual limitations clause in Defendant's Account Agreement, survive summary judgement, prevail on a Motion for Class Certification, and obtain favorable results in pre-trial motions. Not to mention, achieving a litigated verdict at trial, and then, sustaining any verdict on

---

[1] Where the other *Grinnell* factors weigh in favor of the Settlement, as they do here, "'[the ability for Defendant's to withstand a great judgement]… alone does not suggest the settlement is unfair.'" *Dupler v. Costco Wholesale Corp*., 705 F. Supp. 2d 231, 241 (E.D.N.Y. 2010) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Another factor, the reaction of the class to the Settlement, cannot be gauged prior to Preliminary Approval and Notice to the Settlement Class.

appeal is a prolonged, complex, and risky proposition that would take years. Overcoming so

many obstacles is a risk, no matter how confident Plaintiff is in her case. As such, the risk of

continued litigation weighs in favor of approving the Settlement. *In re Global Crossing*

*Securities and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Further, any additional time litigating the case is costly for all parties. Defendant is a

sophisticated opponent with the resources to prosecute the claims through trial and potentially

multiple appeals. There is little doubt that continued litigation against Defendant could span

years and be costly to all parties, and tax judicial resources. As such, the substantial risk of

continued litigation weighs in favor of approving the Settlement. *See In re IPO*, 671 F. Supp. 2d

467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense, and duration of continued

litigation supports approval where, among other things, "motions would be filed raising every

possible kind of pre-trial, trial and post-trial issue conceivable").

Apart from substantial risk and expense, courts overwhelmingly recognize that the delay

of resolution by itself is a significant consideration in approving a settlement. "[E]ven if a

[plaintiff] or class member was willing to assume all the risks of pursuing the actions through

further litigation . . . the passage of time would introduce yet more risks . . . and would in light of

the time value of money, make future recoveries less valuable than this current recovery."

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y.

2003). Inevitable litigation delays "not just at the trial stage but through post-trial motions and

the appellate process, would cause Class Members to wait years for any recovery, further

reducing its value." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y.

2002); *see also In re Marsh & McLennan, Cos. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL

5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (noting the additional expense and uncertainty of

"inevitable appeals" and the benefit of Settlement, which "provides certain and substantial recompense to Class members now"); *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc*., No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987) ("[E]ven assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away").

Thus, in the face of risk, further expense, and delay, the Settlement presents itself as a fair alternative that adequately compensates the class.

### 2. Discovery Has Advanced Far Enough to Allow the Parties to Reasonably Resolve the Case

*Grinnell* requires the parties to engage in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the settlement. *Flores v. One Hanover*, No. 13 Civ. 5184(AJP), 2014 WL 2567912, at *4 (S.D.N.Y. June 9, 2014). This factor is "relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re PaineWebber Ltd. P'ships Litig*., 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

Here, Class Counsel came to the litigation with extensive knowledge concerning overdraft fee practices. In addition to this significant head start, Class Counsel have devoted substantial time and resources to investigating the facts of the case and the legal arguments for and against their claims. The Parties served written discovery and Class Counsel reviewed extensive transaction data in the context of discovery and in mediation. Berger Decl, ¶ 4. Having conducted a thorough investigation of Plaintiff's and the Class's claims, Class Counsel was able to make informed settlement decisions in the best interests of Plaintiff and the Class. *Id*. As such, the Parties are well aware of the relative strengths and weaknesses of their respective cases. This informed the settlement negotiations and has led the Parties to conclude the Settlement is fair.

### 3. Plaintiff Would Face Real Risks Establishing Liability and Damages If the Case Proceeded

In addition to each of the procedural milestones Plaintiff must overcome, she must also overcome risks associated with establishing liability and damages. While Plaintiff and Class Counsel are confident in the strength of their case, they are also pragmatic in their awareness of HSBC's various defenses, as well as the risks they face in establishing both liability and damages. Nonetheless, courts routinely approve settlements where a plaintiff would have faced significant legal and factual obstacles to establishing liability. *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 63 (S.D.N.Y. 2003). Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

Plaintiff faces substantial risks on the merits of her claims. The remaining breach of contract claim will turn on how the factfinder construes the term "item" in the Account Agreements. Although Plaintiff believes she has a strong chance on the merits, it is possible that Plaintiff might lose on the merits either at trial or summary judgment. Berger Decl. ¶ 25. Not to mention, even if Plaintiff does establish that the contract is ambiguous, she will face even further complication proving to a jury the extent of damages which will require multiple experts and explaining complex data. *Id.* For these reasons, the Settlement is a fair result that guarantees recovery for class members now.

### 4. Establishing A Class and Maintaining it Through Trial Would Not be Simple

The risks inherent in attaining and maintaining class status also are relevant in assessing the fairness of the Settlement. *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 241 (E.D.N.Y. 2010); *accord Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("Although class certification has been approved by this Court for the purpose of settlement, it is

14

not certain that the case would be certified in the absence of settlement."). As this Court has not

yet certified a class, it is unclear whether certification would have been granted, and resolving

this uncertainty is its own risk to the class. *See Dupler*, 705 F. Supp. 2d at 241 (difficulties in

obtaining a nationwide class weighed in favor of settlement).

Although Plaintiff has not yet moved for Class Certification, HSBC would vigorously

oppose a litigated motion to class certification, and Plaintiff's success is not guaranteed. Berger

Decl. ¶ 26. Accordingly, the risks inherent in maintaining class action litigation favor settlement.

### 5. The Settlement Fund is Adequate in Light of the Possible Recovery and Attendant Risks of Litigation

Courts often jointly consider how a proposed class settlement compares to the best

possible recovery and in light of all the attendant risks of litigation. *See Ferrick v. Spotify USA*

*Inc.*, No. 16-cv-8412 (AJN), 2018 WL 2324076, at *5-6 (S.D.N.Y. May 22, 2018). The Court

need only determine that the Settlement is reasonable in light of the legal and factual

uncertainties "and the concomitant risks and costs necessarily inherent in taking any litigation to

completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). The adequacy of the amount

achieved in settlement may not be judged in comparison with the possible recovery in the best of

all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."

*Christine Asia Co. Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at * 11

(S.D.N.Y. Oct. 16, 2019) (internal quotations omitted).

Plaintiff believes that the monetary relief delivered here is strong and weighs in favor of

settlement approval. The dispute centers on HSBC's assessment of insufficient funds fees on

debit card transactions that were re-submitted for payment or "Retry Overdraft Fees." With this

Settlement, Plaintiff has achieved her desired goal of compensating Class Members charged

Retry Overdraft Fees during the Class Period. Based on an extensive analysis of HSBC data, the

15

Settlement Fund represents approximately 42% of the total damages that potentially would be available if Plaintiff were to succeed at all phases of litigation, including trial. Berger Decl. ¶ 27.

A 42% return is substantial, particularly when viewed in light of HSBC's potential defenses. For example, HSBC contends that a limitations clause in its contracts precludes a significant percentage of classwide damages. While Plaintiff disagrees—and believes that the prospect of defeating the clause presents substantial risk for HSBC—settling now avoids the years of litigation if would take to resolve the issue, which would certainly involve an appeal to the Second Circuit. *Id.*

In addition, this Settlement either meets or exceeds many court-approved recoveries in overdraft fee class actions nationwide. *See Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (praising as "outstanding" and "a significant achievement," a cash fund providing between 13 and 48 percent of the maximum damages); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2015 WL 12641970, at *1 (S.D. Fla. May 22, 2015) (approving settlement providing 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 WL 1927342, at *3 (N.D. Cal. Apr. 28, 2015) (approving settlement of approximately 38% of damages); *Torres v. Bank of Am.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (approving settlement of between 9 and 45 percent of the total potential damages); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 198 (D.D.C. 2011) (approving overdraft settlement with recovery range of 12 to 30 percent as "within the realm of reasonableness"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (approving settlement representing 10% of potential recovery). In comparison, the 42% recovery obtained here, falls in the upper range of recoveries, despite the substantial litigation risks specific to this case. Thus, weighing the benefits of the settlement against the risks

associated with proceeding in the litigation," the settlement amount achieved in the instant action is more than reasonable.

### d.   The Terms of Any Proposed Award of Attorneys' Fees

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred in this case. Under the Settlement Agreement, Class Counsel are entitled to request, and HSBC will not oppose, attorneys' fees of up to one-third of the Settlement Fund, as well as reimbursement of litigation costs and expenses incurred in connection with the Action. Settlement Agreement § 7.3.

The award, however, remains subject to this Court's approval under Rule 23(e)(2)(C)(iii), which requires evaluation of the terms of any proposed attorneys' fees, including timing of payment. The Settlement provides that attorneys' fees will be paid from the Settlement Fund only after a separate application is made, Settlement Class Members have a chance to object, and the Court determines the appropriate amount. Berger Decl. ¶ 17. While an application for fees has yet to be made, the Notice will explain how Class Counsel will be paid, including that Counsel intends to make an application to the Court for attorneys' fee of no more than $658,333.33.

### e.   Disclosure Of Side Agreements.

Finally, the Court must consider any side agreements made in connection with the Settlement.  Rule 23(e)(2)(C)(iv). This is because side agreements can result in inequitable treatment of Class Members. (Fed. R. Civ. P. 23(C) advisory committee's note to 2018 Amendments.) Here, the Settlement before the Court is the only agreement. Berger Decl. ¶ 7.

### f.   The Settlement Treats Class Members Equitably Relative To Each Other

Rule 23(e)(2), which addresses whether Class Members are treated equally relative to

each other, also favors approval. This factor "could include whether the apportionment of relief among Class Members takes appropriate account of differences among their claims, and whether the scope of the release may affect Class Members in different ways that bear on the apportionment of relief." (Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.)

Because the Settlement distributes proceeds on a *pro rata* basis, Settlement Class Members will be treated equitably. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 47 (E.D.N.Y. 2019) (finding that the pro rata distribution scheme is sufficiently equitable); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity"). Further, the scope of the release applies uniformly to Settlement Class Members and does not affect apportionment of the relief to Settlement Class Members. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 698, 699 (S.D.N.Y. 2019). The Parties explicitly agree that the Release from the Settlement Class is not a general release of claims against HSBC, nor does it release any claims that Settlement Class Members may have against other individuals or entities. Settlement Agreement §§ 8.1-8.4. Rather, the release is tailored to the expressly-defined Released Claims. *Id.* Accordingly, this Court should find that this factor weighs in favor of granting preliminary approval.

## II.    <u>The Court Should Certify The Settlement Class.</u>

The second prerequisite for directing notice of the settlement to the class is a determination that the class is likely to meet the requirements for certification for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(ii). As a threshold matter, Courts in the Second Circuit impose a judicially-created ascertainability requirement. Certification next requires that all four elements of Rule 23(a) and at least one prong under Rule 23(b) be satisfied. In addition, the

Court must assure itself that the proposed forms of notice to the class are the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B)

### a. Ascertainability

A class is ascertainable "if it is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Secs.*, 862 F.3d 250, 257 (2d Cir. 2017). "[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* at 264. "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.*

The Class here is ascertainable. The Class includes persons who, held a consumer deposit account during a specific time period and the account was charged a Retry Overdraft Fees. As such, there is an objective subject matter and time frame identifying a sufficiently definite subset of HSBC accountholders. Accordingly, ascertainablity is met.

### b. Numerosity

Rule 23(a)(1) requires that a proposed Settlement Class be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but rather difficulty or inconvenience." *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 409 (S.D.N.Y. 1998). Ordinarily, a proposed class that exceeds forty members is considered presumptively numerous for purposes of this requirement. *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) ("Numerosity is presumed for classes larger than forty members."). Here, the proposed Class includes thousands of individuals and is so numerous that joinder is not practical. Berger Decl. ¶ 2**.** Accordingly, the Class easily

meets Rule 23(a)(1).

    **c. Commonality**

Plaintiff's breach of contract claim involves common questions of fact and law regarding whether HSBC's fee practices violate its standard Account Agreements. Commonality requires that the claims subject to proposed class treatment implicate common questions that will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quotation omitted). This factor "does not require all questions of law or fact to be common," and "even a single common question will suffice." *Sykes v. Mel Harris Associates, LLC*, 285 F.R.D. 279, 286 (S.D.N.Y. 2012). In particular, "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004).

Here, there are ample legal and factual issues that are common to the underlying claim and that are susceptible to classwide resolution. All putative Class Members were parties to HSBC's standard account contracts. As the Court knows from ruling on HSBC's Motion to Dismiss, resolution of the claim will turn on how this dispute concerns whether HSBC's standard fee practices during the class period violated the account agreements between Class Members and HSBC. In this case, all members of the proposed class assert that HSBC breached its account documents by charging Retry Overdraft Fees. Defendant and the class member's relationship is governed by Defendant's Account Agreement which is identical across the board. Further, the conduct complained of in the complaint is identical as to Plaintiff and the Class Members. Therefore, proving Plaintiff's breach of contract claim will involve numerous common questions of law and fact that will be resolved in the same way for all Class Members. The commonality

requirement is thus met.

### d.  Typicality

Rule 23(a) next requires the proponent of class treatment to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability." *Stinson v. City of New York*, 282 F.R.D. 360, 370–71 (S.D.N.Y. 2012) (citation omitted). "When the same unlawful conduct was directed at or affected both the named plaintiffs and the prospective class, typicality is usually met." *Id*. at 371. Generally speaking, minor variations in the fact patterns underlying the individual claims will not preclude a finding of typicality unless there are "unique defenses" that threaten to become the focus of the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).

Here, Plaintiff's claims are typical of the Class's claims because they arise from the same course of conduct by Defendant, are based on the same legal theories, and are based on the same form contract documents. Thus, typicality is met.

### e.  Adequacy

The final requirement for Rule 23(a) requires that representative parties fairly and adequately protect the interest of the class. "[T]he adequacy [requirement] is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). In addition, class counsel must be "qualified, experienced and able to conduct the litigation." *Baffa*, 222 F.3d at 60.

Here, Plaintiff has fairly protected the interest of the Class and actively participated in the

litigation. Further, Plaintiff has no interest's antagonistic to the interests of the class. Additionally, Class Counsel are abundantly qualified and have extensive experience in class actions, and actions against banks for improper fees. The requirement is thus met.

### f. Predominance:

The predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)) (internal quotation marks omitted).

The requirement is met here for purposes of settlement because the overwhelming majority of issues of law and fact are common to all Class Members. Class Members' claims all arise from a common course of conduct in charging the fees at issue and are proven by the same generalized proof of Defendant's processing of fees and form contracts.

### g. Superiority

A class mechanism is superior to other means of adjudicating Class Members' claims because individual litigation would result in inconsistent or varying adjudications with respect to individual Class Members and would establish incompatible standards of conduct for the party opposing the class. Further, adjudication of individual class member claims, as a practical matter, would be dispositive of, substantially impair, or impede the interest of other members not party to the action.

A class action is superior to other means of adjudicating Class Members' claims because it allows both the parties and the Court to benefit from economies of scale and the final and

consistent resolution of relatively small claims ($35 per fee) in one forum.

Further, it is impracticable to bring Class Members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense. Litigating the claims of thousands of Class Members would be infeasible because it would require presentation of the same evidence and expert opinions many times over. Thus, all the requirements set forth in Rule 23 are met and warrant certification of the Settlement Class.

III.    **The Court Should Approve the Proposed Notice Plan and Administrator**

Rule 23(e) provides that "notice of the proposed . . . compromise shall be given to all members of the class in such manner as the court directs." Due process likewise requires that Class Members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The method and manner of notice process is "left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975). However, "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311. "Courts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it 'describe[s] the terms of the settlement generally[,]' and 'inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing.'" *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012).

There is no single way in which the notice must be transmitted; however, numerous courts have allowed notice to be sent to Class Members through e-mail. *Fairnella v. Paypal, Inc*., 611 F. Supp. 2d 250 (E.D.N.Y. 2009); *Keirsey v. eBay, Inc*, No. 12-cv-01200, 2014 WL 644697, at *1 (N.D. Cal. 2014); *Anwar v. Fairfield Greenfield Ltd*., No. 1:11-cv-00813, 2012 WL 2273332, at *1 (S.D.N.Y. 2012). Further, mail notice is sufficient when the Class Members are known. 7B Wright & Miller, Federal Practice and Procedure §1797.6 at 200 (3rd ed. 2005).

The parties, therefore, propose to notify Class Members individually by email or mail. The identity and addresses of individual Class Members are known to the Administrator and Class Counsel from the records provided by HSBC. Reasonable efforts will be made to re-email and re-mail notices to Class Members whose initial notice was returned as undeliverable. The notice itself is written in plain English and includes a description of the litigation, the claims being made, and the terms of the settlement as well as information for Class Members about the deadlines and their rights to opt out or object. In addition, the Settlement Administrator will publish a website where Class Members will be able to view and download copies of pleadings, orders, and the documents relating to the settlement.

As such, this notice program satisfies the requirements of due process and Rule 23 and thus should be approved.

### a.   CAFA Notices

The Class Action Fairness Act ("CAFA") requires that ten days after the Class Representative files her motion for preliminary approval of the Settlement, settling defendants give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). HSBC will serve the CAFA Notice, along

with a CD containing the documents described in Section 1715(b). Settlement Agreement § 6.6.

## IV.    **The Undersigned Counsel Should be Appointed to Represent the Class**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As described in detail above, Class Counsel diligently investigated and litigated Plaintiff's claims and have and will continue to devote substantial time and resources to this litigation. Class Counsel have extensive experience with similar class action litigation and have been appointed in many class actions. *See* Berger Decl. ¶¶ 5, 19. Accordingly, the Court should appoint the undersigned Plaintiff's counsel to serve as Class Counsel pursuant to Rule 23(g).

## CONCLUSION

Plaintiff respectfully requests that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify the Settlement Class; (3) appoint Plaintiff as Class Representative; (4) approve the Notice Program and the Notices attached as Exhibits A, C, and E; (5) approve the opt-out and objection procedures; (6) stay this Action pending final settlement approval; (7) appoint Class Counsel; and (8) schedule a final approval hearing. Plaintiff submits contemporaneously with this memorandum a Proposed Preliminary Approval Order Preliminarily that sets forth the various deadlines referenced herein and in the Agreement.

Dated:  April 13, 2022                                        Respectfully submitted,

                                                                                     */s/ David M. Berger*
                                                                                     David M. Berger

Eric H. Gibbs
GIBBS LAW GROUP, LLP
501 14th Street, Suite 1110
Oakland, CA 94612
(510) 350-9700
dmb@classlawgroup.com
ehg@classlawgroup.com

Jeffrey Kaliel
Sophia G. Gold
Kaliel Gold PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielgold.com

John A. Kehoe (JK-4589)
KEHOE LAW FIRM, P.C.
41 Madison Avenue, 31st Floor
New York, NY 10010
(212) 804-7700
jkehoe@kehoelawfirm.com

*Counsel for Plaintiff and the Proposed Class*